# Brighton Road.

*Road law—Paving—Cities of the second class—Ordinance—Estimate—Act
of March 7, 1901, P. L. 20.*

Where the councils of a city of the second class passed an ordinance
prior to the act of March 7, 1901, for the paving of a street, and thereafter
let a contract for the improvement without an estimate furnished to the
councils and without any additional ordinance, as provided by the act
of March 7, 1901, and the city subsequently in various ways adopts and
ratifies the contract, a landowner cannot, in proceedings to assess damages
and benefits, allege that the contract is invalid.

Argued Nov. 1, 1905.   Appeals, Nos. 20, 21, 22, 23 and 24,
Oct. T., 1905, by Conrad Dietrich et al., from order of C. P.
No. 3, Allegheny Co., Nov. T., 1902, No. 433, dismissing ex‐
ceptions to report of viewers In re Brighton Road.   Before

MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of viewers.

KENNEDY, P. J., filed the following opinion :

This improvement was made under an ordinance of the city of Allegheny, approved May 24, 1900, which ordinance is as follows :

" That the grading, paving and curbing of the Brighton road, second, tenth, eleventh and fifteenth wards, from Washington avenue to the City Line, is hereby authorized and ordered ; and the department of public works is hereby instructed to prepare specifications therefor, and to advertise for proposals for doing said work in accordance with such specifications.

" When said proposals shall have been received they shall be submitted to and opened by the committee on public works, and it shall be the duty of said committee at the next meeting of councils, or as soon thereafter as practicable, to report an ordinance awarding the contract for said work to the lowest responsible bidder."

Nothing was done under this ordinance in regard to the letting of the contract for this improvement until July, 1901, when, on the 3d, 4th and 5th of that month, the advertisement provided for in said ordinance was inserted in the public newspapers, the bids received thereunder on the 10th of the same month and the contract let July 30, 1901, to the lowest responsible bidder, being signed by the city recorder and director of the department of public works.

In the meantime the new charter act and amendment thereto was passed. Article 15, sec. 1, of the act of the legislature, entitled : " An Act for the government of cities of the second class," approved March 7, 1901, and known as the " Ripper Bill," provided, inter alia, as follows :

" Contracts shall be let as heretofore in each of the cities of said class as heretofore. . . . All contracts shall be in writing, signed and executed in the name of the city by the City Recorder and head of the proper department. No contract shall be entered into or executed directly by the councils or any committee thereof. . . . Every contract for public im-

provements shall be based upon estimates of the whole cost, furnished by the proper officer, through the department having charge of the improvement, and no bid in excess of such estimate shall be accepted."

An amendment of this act, approved June 20, 1901, provided in sec. 11 thereof, inter alia, as follows :

" Every contract shall be let by the city recorder and head of the proper department. . . . No contract shall be let until councils have passed an ordinance providing for the letting of the same by the city recorder and head of the proper department."

On January 7, 1901, an ordinance was passed by councils, submitting to a vote of the electors of the city, the question of an increase of its bonded indebtedness, to pay the expense of this improvement when made, and the election thereunder resulted in favor of the issuance of said bonds, and on November 11, 1902, another ordinance was passed, authorizing the issuance of the bonds, the proceeds of which were applied to the payment of the cost of this improvement.

Work was begun August, 1901, and completed in September, 1902, at a cost of $147,201.71 ; accepted by the city and paid for out of the proceeds of the bonds issued therefor, to the contractor or his assignee, the final estimate being made September 1, 1902, and payment December 3, 1902.

On October 4, 1902, these proceedings were instituted by the city for the appointment of viewers to assess the damages and benefits, the said viewers were appointed by this court, and filed their report September 12, 1903, to which report these exceptions were filed.

The first and third exceptions raise the same question, viz. : a failure to comply with the provisions of the act of assembly relating to the letting of contracts ; the alleged want of compliance being that no ordinance was ever passed by councils authorizing the letting of the contract for the improvement. It appears that no such ordinance was passed.   Does this proceeding fail for that reason?

At the time of the passage of the ordinance of May 24, 1900, authorizing this improvement, the power of awarding the contract was by ordinance vested in the committee of public works. Subsequently, and before the contract was let, the act of

March 7, 1901, and amendment thereto of June 20, 1901, changed all this and required the contract to be let by the city recorder and head of the proper department, and on July 30, 1901, the contract for doing the work of this improvement was let and signed by the city recorder and director of the department of public works, but without any other or special ordinance therefor.

We do not think the omission fatal to this proceeding. The validity of the ordinance of May 24, 1900, was not affected by the subsequent acts of assembly. By it the improvement was authorized and the director of the department of public works was instructed to prepare specifications and advertise for proposals, and the committee on public works to report an ordinance awarding the contract. This power was not exercised by the committee, but by the recorder and director of public works, and it seems plain that the irregularity in the letting of the contract occurred through the confusion incident to the radical change in the law of the municipality by the acts of assembly, and we think the city could waive such irregularity. It having the power to make the contract, it has also the power to adopt the contract that has been made for it by its agent, even if made irregularly, and it seems plain that the city, by its subsequent acts, has fully adopted this contract. It accepted the work. It issued a final estimate to the contractor. It issued bonds to raise money with which to pay the contractor. It paid the contractor. It instituted these proceedings to collect the cost of the improvement from the abutting property holders. These acts constitute a complete adoption of the contract, taking the place of a prior ordinance for its letting.

It is to be observed that there is no fraud alleged on the part of the city or its officers in the letting of the contract, nor is it even attempted to be shown that the work was not done in accordance with the contract and specifications, nor that it was not well done, and this, therefore, is a matter with which it seems the property holder (exceptant) has nothing to do. The contract is not made with or for him and does not require his ratification. It is with and for the city alone, and it having approved and adopted the contract, the property holder cannot defend against the payment of his tax, although the contract under which the work was done was void or voidable by reason

of irregularity or want of authority in the agent by whom it was executed.

Authority for the principles here stated is to be found in The Trustees of Erie Academy v. City of Erie, 31 Pa. 515; Phila. to use of O'Rourke v. Hays, 93 Pa. 72; McKnight v. City of Pittsburg, 91 Pa. 273; Philadelphia v. Gorgas, 180 Pa. 296.

The second exception relied on is that no estimate of the cost of improvement was furnished to city council, as required by sec. 11 of the act of June 20, 1901, above quoted. The answer to this is that this improvement was authorized by ordinance of May 24, 1900, before the passage of the act of assembly, and when such estimates were not required to be furnished to city councils, and we have seen the validity of this ordinance was not affected by subsequent acts of assembly.

＊      ＊      ＊      ＊      ＊      ＊      ＊      ＊

All of the exceptions to the report of the board of viewers must be dismissed, and the said report confirmed absolutely.

*Errors assigned* were in dismissing exceptions to report of viewers.

*C. C. Dickey*, of *Shiras & Dickey*, with him *T. P. Trimble, J. M. Shields, Charles W. Feigel, Samuel A. Ammon, F. C. Osborn* and *J. C. McCombs*, for appellants.—This court has uniformly held that legislative provisions relating to municipal corporations are mandatory and must be strictly followed in order to charge the private property : Western Penna. Ry. Co. v. Allegheny, 92 Pa. 100 ; Hershberger v. Pittsburg, 115 Pa. 78; Fell v. Philadelphia, 81 Pa. 58 ; Pittsburg v. Walter, 69 Pa. 365 ; Morewood Ave., 159 Pa. 39; Carpenter v. Yeadon Borough, 208 Pa. 396 ; Bradford v. Fox, 171 Pa. 343; Erie City v. Brady, 127 Pa. 169; Beaumont v. Wilkes-Barre, 142 Pa. 198 ; Reading v. O'Reilly, 169 Pa. 366 ; Edgar v. Pittsburg, 114 Fed. Repr. 586 ; Malone v. Philadelphia, 147 Pa. 416; McManus v. Philadelphia, 201 Pa. 619 ; Hepburn v. Philadelphia, 149 Pa. 335 ; Pound v. Supervisors of Chippewa County, 43 Wis. 63 ; State v. Thomas, 7 Mo. App. 205 ; Cuming v. Grand Rapids, 46 Mich. 150 (9 N. W. Repr. 141) ; Hentig v.

Gilmore, 33 Kansas, 234 (6 Pac. Repr. 304); Frosh v. Galveston, 73 Texas, 401 (11 S. W. Repr. 402).

*Stephen G. Porter*, city solicitor, with him *W. W. Stoner* and *Craig Smith*, for appellees, cited: Trustees of the Erie Academy v. City of Erie, 31 Pa. 515; Phila. to use of O'Rourke v. Hays, 93 Pa. 72; Philadelphia v. Gorgas, 180 Pa. 296; Shiloh Street, 165 Pa. 386; Amberson Avenue, 179 Pa. 634; Chester v. Eyre, 181 Pa. 642; Potts v. Phila., 195 Pa. 619.

PER CURIAM, January 2, 1906:

These cases involve substantially the same questions and were disposed of by the court below in one opinion on which the judgments are affirmed.