## Chester School District's Audit.

Argued April 16, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John B. Hannum, Jr.,* of *Hannum, Hunter, Hannum & Hodge,* with him *S. Edward Hannestad, J. Allen Hodge, J. DeHaven Ledward* and *Kingsley Montgomery,* for appellants.—There was no corruption, dishonesty or fraud in these cases; none of appellants profited as a result of their mistakes as to what was proper (if there were any mistakes) ; and the school district in no way suffered or sustained any loss.

There was no violation of section 403 of the School Code: Aspinwall-Delafield Co. v. Boro., 229 Pa. 1; Chapman v. Co. Comrs., 107 U. S. 348; Cooper v. School Dist., 39 Pa. Superior Ct. 485; Curley v. School Dist., 25 Luzerne L. R. 2; Millvale Boro., 162 Pa. 374; Brighton Road, 213 Pa. 521; Little Rock v. Bank, 98 U. S. 308.

The provisions of the School Code may be waived where it appears to be necessary or to the advantage of the school district: Duryea Boro. S. Dist.'s Audit, 1 Pa. D. & C. 688; Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Phila. Co. v. Pittsburgh, 253 Pa. 147; Scola v. Twp.,

18 Del. Co. R. 184; Summit Hill School Directors' Removal, 289 Pa. 82.

A surcharge, where there has been no loss to the school district, is a fine, and in the present case the amount thereof is excessive and in violation of the state and federal Constitutions: Scranton v. Coal Co., 274 Pa. 63; Com. v. Davison, 11 Pa. Superior Ct. 130.

Decree removing appellants from office was not warranted by the facts in this case: Pittston City S. Directors, 6 Pa. D. & C. 545; Salisbury Twp. S. Dist., 38 Lanc. L. R. 16; White v. Moore, 288 Pa. 411; Removal of School Directors of Scranton, 25 Lack. Jurist 343; Whetstone v. Williams, 28 Pa. Dist. R. 737.

The Commonwealth may forgive debts or obligations due it: Ford v. School Dist., 121 Pa. 543; Duff v. School Dist., 281 Pa. 87; Gilbert Boro. School Dist. v. Morris, 290 Pa. 7.

The legislature has the power to legislate restrospectively on all matters, not penal nor in violation of contracts: Towanda Boro. v. Fell, 69 Pa. Superior Ct. 468, 471; Plumly v. Hadley, 9 Pa. D. & C. 281; Weister v. Hade, 52 Pa. 474.

Act No. 1 of the section of 1929 relieves the school directors of any obligation to the school district.

All remedial legislation must be liberally construed so as not to defeat the avowed purpose of the legislature in their adoption: Wright v. Barber, 270 Pa. 186; Duggan v. Duggan, 291 Pa. 556, 560; Vinnacombe v. Phila., 297 Pa. 564, 569; Towanda Boro. v. Fell, 69 Pa. Superior Ct. 468; Rochester Trust Co. v. White, 243 Pa. 469.

*James L. Rankin,* of *Geary & Rankin,* for appellee.— The surcharges were proper: Strathern v. Gilmore, 184 Pa. 265; Waltman v. Twp., 64 Pa. Superior Ct. 458; Scott v. School Directors, 17 Del. Co. R. 197; Sykesville Boro. App., 91 Pa. Superior Ct. 335; Jackson v. School Dist., 280 Pa. 601; Kreusler v. School Dist., 256

Pa. 281; Mauch Chunk Twp. School Dist., 75 Pa. Superior Ct. 434.

The removals were proper: Summit Hill Dist. Case, 258 Pa. 575; Dunmore School Directors' Removal, 3 Pa. D. & C. 58; Wilkes-Barre Twp. S. Directors, 5 Pa. D. & C. 244; Coal Twp. S. Directors, 290 Pa. 200.

The following decisions of our appellate courts are very much in point in connection with the real effect of the Act of 1929 as it applies to the Chester School Board cases: Barnet v. Barnet, 15 S. & R. 72; Greenough v. Greenough, 11 Pa. 489; Menges v. Dentler, 33 Pa. 495; Lewis v. R. R., 220 Pa. 317; Old Forge S. Dist., 27 Pa. Superior Ct. 586.

OPINION BY MR. JUSTICE SIMPSON, September 29, 1930:

The nine appellants who have taken these twenty-six appeals, were formerly school directors of the second-class school district of the City of Chester. The proceedings below were but four in number; they were heard together in the court below and there determined at the same time, were argued together here, and will all be decided in this one opinion. Three of them were appeals, authorized by section 2622 of the School Code of May 18, 1911, P. L. 309, 428, by citizens and taxpayers of the school district, from the audit of the accounts of the board for the three school years of 1923-4, 1924-5, and 1925-6 respectively; the fourth was a petition by more than ten resident taxpayers, authorized by section 217 of the Code (P. L. 321), praying the removal from office of all the school directors, because of their neglect of duty. In the first three cases, each of the school directors was held liable for such of the wrongful expenditures as he or she voted for during the particular school year under consideration. This is the requirement of sections 516, 517 and 2613 of the Code, P. L. 336, 427. In the fourth, all of the directors were removed from office.

The court below considered the objections to the payments out of the school funds, under four heads. The first embraced supplies of the first class, that is "school desks, chairs, typewriters, and school apparatus": section 706 of the Code, P. L. 354. In the purchase of these, advertisement is not essential, but if their cost will be $100 or more, the board must, by section 707 of the Code (P. L. 354), "solicit sealed quotations from two or more firms, manufacturers, or dealers in such supplies, and at a regular meeting shall open such bids and quotations, and shall accept the lowest bid, when the kinds of supplies offered, and their kind, quality, and character of material, are the same, or are equal or satisfactory." The court below says that, as to these, he sustained the action of the school board in all cases where "there is any evidence of any attempt to obtain competitive bids."

The second head embraced the second class of school supplies specified in section 706 of the Code (P. L. 354), and included "maps, globes, and all other supplies, except textbooks, necessary for school use, not included in the first class." As to these, section 708 provides (P. L. 354) that if their cost will be $300 or more, they "shall be awarded and purchased only after public notice has been given by advertisement, published once each week for three weeks in not less than two newspapers of general circulation." Concerning this class, the court below said: "No items were included in this category, or charged against the defendants, except those regarding which the evidence showed that there had been no advertisement whatever."

The third head embraced the subject-matter of section 617 of the Code (P. L. 350), as amended by the Act of July 10, 1919, P. L. 889, which provides that "All construction, reconstruction, repairs, or work of any nature, including the introduction of heating, ventilating, or lighting systems, upon any school building or upon any school property......where the entire cost, value, or amount......including labor and material, shall ex-

ceed $300, shall be done under contract or contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids." As to this class, the court below said credits for payments made by defendants were refused only "where the evidence showed that no contract whatever had been entered into by the school district after any public notice had been given asking for competitive bids."

The fourth class consisted of expenditures alleged to have been made in violation of section 403 of the Code (P. L. 330), which provides that "The affirmative vote of a majority of all the members of the board of school directors......duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:—...... Entering into contracts of any kind, including the purchase of fuel or any supplies, where the amount involved exceeds $100." This section is, in effect, amended by the Act of May 11, 1927, P. L. 965, which validates unrecorded actions and votes, "if such action or vote was actually taken, or duty performed, or power exercised by the board as required by law." In this class, the court below said the credits were disallowed only in those instances where "there was no evidence or claim that any prior contract had been entered into" regarding them.

After final judgment had been entered by the court below, the Act of February 20, 1929, P. L. 3, was approved by the governor. It is as follows: "Section 1. Be it enacted, etc., That whenever any board of school directors shall have heretofore contracted for labor, materials, and supplies, for the school district, the purchase of which by contract are authorized under the provisions of the school laws of the Commonwealth, and such board of school directors has actually received such labor, materials, and supplies, and the same are being used by the school district—if the said contract does not evidence any fraud or conspiracy to violate the provi-

sions of the school laws of the Commonwealth, and the school district has not suffered any pecuniary loss as the result of such contract, then such contract shall be valid and binding on the school district and payment for such labor, materials, and supplies, by the school district is hereby ratified, confirmed, and validated, notwithstanding the fact that the affirmative votes of the majority of the board of school directors were not recorded in the minutes showing how each member voted, as required by law. No board of school directors, or any member thereof, shall be subject to surcharge for payments made by any board of school directors on any such contract. Section 2. This act shall be in force immediately upon its passage and approval by the governor."

Relying upon that statute, defendants applied for and were granted a rule, in each of the three appeals from the audit of their accounts, "to show cause why the judgments entered against them as aforesaid should not be opened and set aside." Without the taking of evidence, the court below discharged these rules, because, as stated by it, the statute "does not affect the basis upon which the judgments were entered"; and because, also, it cannot "be considered as a reversal by the legislature of a final judgment of this court. Such an attempt would be obnoxious to the objection that the legislature possesses no such constitutional power. There is nothing in the act to indicate such legislative attempt, and it cannot be presumed." We do not agree with this conclusion. It is undoubtedly true that, where only private interests are concerned, a final judgment cannot be overthrown by a statute subsequently passed; Greenough v. Greenough, 11 Pa. 489, is the case where that point is most elaborately considered, and Lewis v. P. R. R. Co., 220 Pa. 317, is probably the latest. Here, however, private interests are not involved, but only those that are public,—the State is dealing with one of its purely public creatures, charged with the performance of a portion of the State's duty. Under such circum-

stances, unless constitutionally inhibited, the control of the State is without limitation. The act is a general one, containing one subject, which is clearly expressed in its title, and we have not been advised of any other provision of the Constitution which has any bearing on this question. We must hold, therefore, that the statute is a valid exercise of legislative power.

This brings us to the real inquiry: Is the act at all applicable in the present case, and if so, to what extent? It will be noticed that it is retrospective: "Whenever any board of school directors shall have heretofore contracted," etc. Whether it is anything but retrospective, we are not called upon to decide at this time. It is clear from the record, that defendants "have heretofore contracted for [at least some of the] labor, materials and supplies" for which they have been held liable. It is clear, also, that the board was statutorily authorized to contract for them, that it actually received them, and they are being used by the school district. The open questions then are, do the contracts in question "evidence any fraud or conspiracy to violate the provisions of the school laws," and has "the school district suffered any pecuniary loss as the result of such contracts," that is, did it pay more by reason of the way the work and materials were ordered and furnished, than it would have paid had contracts therefor been awarded in the manner the then-existing statutes provided. These points were not mooted in the court below, because at the time the evidence was there produced, they were matters of no moment. Because of the Act of 1929, they have now become so, and appellants have the right to prove the controlling facts; the burden of proof of course being upon them, since they are seeking to escape a liability by virtue of a subsequent statutory exemption alleged to operate in their favor: Suravitz v. Prudential Ins. Co., 261 Pa. 390; Doud v. Hines, 269 Pa. 182; Lipshutz v. Lipshutz, 274 Pa. 217, 221.

We have not overlooked the provision of the act referring to the failure to record, in the minutes, the votes on such contracts, but cannot give to it the effect of controlling the entire statute. So to limit the Act of 1929, would make it little, if anything, more than a restatement of the Act of May 11, 1927, P. L. 965. Relief from a failure to record is not the paramount purpose of the former act, but only prevents that failure from being considered as a reason for holding the directors liable, when the other provisions of the statute would relieve them. It says that "such contract [i. e., as previously referred to]......is hereby ratified, confirmed, and validated, notwithstanding" the failure to record the votes in its favor. It means, therefore, that the failure to record the votes shall not operate to continue the surcharge, in cases where, under the prior provisions, the directors would be relieved. Nor have we forgotten that no exception was taken in the court below to the dismissal of appellants' petition for relief because of the statute. Where a public policy is or may be controlling, however, this court will, of its own motion, take cognizance of the matter, though it was not even suggested in the court below.

We conclude, therefore, that instead of dismissing the petitions, the court below should have taken evidence on the questions involved, and decided to which, if any, of the contracts the Act of 1929 was applicable, and, in so far as it was, refused to surcharge the directors. This duty is expressly declared in the last provision of the act, which says that "No board of school directors, or any members thereof, shall be subject to surcharge for payments made by any board of school directors on any such contract." Perhaps it should also be said that the statute has no bearing on any question regarding the ultimate liability of the respective parties for the fees and expenses incurred by them before the act was passed, nor as to the costs of the case previous to that time.

As there may be surcharges to which it will be found the statute does not apply, we shall now consider the other points argued on the present appeal. Over and over again appellants ask us to reverse the court below simply because, as they aver, the school district did not suffer any loss from their breach of duty, and they did not individually make any gain. Assuming the facts to be so, we can sympathize with their feelings, but their arguments are addressed to the wrong tribunal. All they have to say on these points was urged by other able counsel, with equal strenuousness, in Hanover Township School District's Audit, 265 Pa. 157. We were compelled to overrule them then, and are required to do so now, especially as there have been five biennial sessions of the legislature since that decision was rendered, and, except with respect to contracts validated by the Act of 1929, supra, our construction of the statute has not been changed by subsequent legislation. On the point under consideration we need only quote, therefore, from that decision (265 Pa. 164-5) : "Finally appellants argue the surcharge was improper because evidence was wanting tending to show the municipality actually suffered financial loss through fault or neglect of the directors, within the meaning of the Act of June 9, 1911, P. L. 865, providing for the surcharge of officers 'whose act or neglect shall have contributed to the financial loss of any municipality or district' and, so far as appears from the record, the school district received full value for the money paid. Section 617, P. L. 350, of the School Code provides that every contract in excess of $300 for the construction and repair of public school buildings 'shall be awarded to the lowest and best bidder, after due public notice has been given.' Section 516 confers upon directors the right to pay out 'in the manner herein provided, any funds of the district for any or all of the purposes herein provided, subject to all provisions of this act. The use or payment of any school funds in any district, in this Commonwealth in any man-

ner or for any purpose not provided for in this act, shall be illegal.' Section 517 provides that 'any school director voting for, or any officer approving, any school order for the payment of school funds for any other purpose, or drawn in any other manner, than that provided in this act, shall......be individually liable to the district for the amount thereof.' In section 2613 it is provided that 'any school order issued in any other manner or for any other purpose than herein authorized shall, if paid, be disallowed by the auditors, and charged against the person or persons voting for or approving the same.' It thus appears that in issuing orders for the payment of money, the directors must be governed entirely by the provisions of the Code with respect to both the manner of payment and the purpose. Payments or acts necessary to constitute 'financial loss' must be determined in view of the above provisions of the law. If the term is to include only the difference between the contract price and the actual value of the work done, thus involving a consideration of the details relating to the performance of the contract, prices, etc., and not the entire loss resulting from the drawing and payment of an order pursuant to a contract illegal because made in violation of the express provisions of the Code, such construction would, in effect, nullify the requirements as to public bidding and permit directors to award contracts to favorite bidders. Similar provisions in other statutes requiring competitive bidding have been uniformly construed to invalidate contracts let without observing the statutory requirements: Lewis v. Phila., 235 Pa. 260, 271, 273.

"While our conclusion imposes a heavy burden upon appellants, the court is without power to relieve them from the effect of their own carelessness or error, whichever it may be: Flinn v. Phila., 258 Pa. 355. The duty of this court is to execute the legislative will in the manner prescribed in statutes so long as no constitutional provision is violated, regardless of the hardship of a par-

ticular case or whether our opinion as to what the law ought to be coincides with that of the legislature: McKibbin v. Martin, 64 Pa. 352, 361; Weber v. Reinhard, 73 Pa. 370, 374."

Appellants also strongly contend that we should apply, in their favor, the rule that if, without contract, one obtains the goods of another, he must return them or pay their fair value; but this also has no application. No one who furnished materials is legally interested in these proceedings. What we are considering is, what the Code says shall be the result as between the school district and the school directors, if the latter illegally disburse the money of the former. Hanover Township School District's Audit, supra, quotes the provisions of the Code, and correctly states the result flowing from a failure to obey them; beyond this there is only a legislative question with which we have nothing to do. Defendants' attempt to have themselves subrogated to the rights of a contractor, who seeks to recover as upon a quantum meruit, in matters of private concern, where he furnished materials which have not been returned, has been not infrequently attempted in this class of cases, and, of course, always without success: in addition to the foregoing authorities, see In re Appeal of Sykesville Boro., 91 Pa. Superior Ct. 335; Kreusler v. McKees Rock School Dist., 256 Pa. 281.

Defendants' next contention is that if the court below had properly interpreted section 403 of the Code (P. L. 350), it would not have charged them with any of the items in schedule 4. It is defendants themselves, however, who have misinterpreted that section. So far as important here, it provides that "the affirmative vote of a majority of all the members of the board......duly recorded, showing how each member voted, shall be required in order to take action on the following subjects ...... Entering into contracts of any kind, including the purchase of fuel or any supplies, where the amount involved exceeds $100." In Jackson v. Conneautville

Boro. School Dist., 280 Pa. 601, we held that acts of a school board in violation of this section are void. In a vain endeavor to override this conclusion, appellants contend that the word "contracts" does not apply to "purchase of fuel or any supplies," and hence the "action" of the board may be taken at any time, after as well as before these articles were ordered, received and used. It is clear, however, that the "purchase" must be by contract, and that the sentence means "Entering into contracts of any kind, including [contracts for] the purchase of fuel or any supplies where the amount involved exceeds $100." Moreover, the purpose of this section is not to show how purchases may be made, but the way in which the directors may show their assent. The requirements regarding their making are specified in sections 706, 707 and 708 (P. L. 354), which direct, as we have already pointed out, the soliciting of "sealed quotations from two or more firms, manufacturers, or dealers in such supplies," if of the first class, and advertisement for three weeks "in not less than two newspapers of general circulation," if of the second class. Under these sections there must be contracts before there can be valid purchases of supplies in excess of $100; a conclusion emphasized by the amendatory Act of May 4, 1927, P. L. 689, which provides that "the board of school directors in any district may authorize or appoint the secretary of the board or other executive as purchasing agent for the district, with authority to purchase supplies of either class costing less than $100."

Further antagonizing the foregoing conclusion, defendants assert that "there is direct authority covering the very situation now before the court [in] the case of Cooper v. Plymouth Twp. School Dist., 39 Pa. Superior Ct. 485"; but that case has not the slightest bearing on this question. There, the action arose and was decided two years before the School Code was passed; the contractor was employed by the school district to do certain repairs; he did them and his bill was unanimously ap-

proved. Payment not having been made, he brought the suit there decided. The opinion states, page 487, "The amount of the bill was reasonable, and the only irregularity in the whole proceeding was that of the officials of the school board in not making a proper record of their action." Of course the contractor recovered; so he would now if that was the "only irregularity" urged against his claim. Besides, no contractor's rights are involved in the present case; but only those of the school directors who have failed to comply with the statutory requirements, and, for that reason, are held liable in exactly the way the statute provided. The case of Brighton Road, 213 Pa. 521, also relied on by defendants, is still further afield. There the city, by ordinance, determined to grade and pave the road; advertisement was duly made, bids received, the contract let to the lowest bidder, and the work done by him was approved and accepted by the city. When the cost was assessed on the property owners, one of them refused to pay because a statute, approved while the proceedings were pending, required an ordinance providing for the letting of the contract, and none had been passed. It was held that the city could waive the irregularity which "occurred through the confusion incident to the radical change in the law," and that this was in fact done.

In the elaborate brief of appellants, a number of other points are made, under the heading that the "Provisions of the School Code may be waived where it appears necessary or to the advantage of the school district." This also is an oft-repeated and often-overruled contention. As we said in Summit Hill School Directors, 258 Pa. 575, 580: "To hold such requirements directory merely [as the above heading again proclaims] would defeat the very object the legislature had in view in inserting them." What school directors may do in expending the funds of the district, and what they may not do, is expressed with much detail in the Code. Section 517 (P. L. 336) says that "Any school director voting for......

a school order for the payment of school funds for any other purpose, or drawn in any other manner, than that provided in this act, shall......be individually liable to the district for the amount thereof." And section 2613 (P. L. 427) says that "Any school order issued in any other manner or for any other purpose than herein authorized shall, if paid, be disallowed by the auditors, and charged against the person or persons voting for or approving the same." These provisions are mandatory, and not matters of discretion.

Assuming that emergencies may arise which require such immediate action as will prevent all the requirements of the Code being complied with (as, for instance, the bursting of a large water pipe resulting in the flooding of a school building), it suffices to say that this record discloses to us no emergency of that imperative nature, and appellants have pointed to none. If one such ever does arise, the board will be justified in passing over such of the requirements as cannot be fully met, but not in ignoring the Code altogether. Hurry-up jobs do appear, but none so greatly hurried that several bids could not have been obtained. They all seem to have been cases where, as appellants say, they simply selected contractors whom they knew to be good. So, also, while it is true that the board was entitled to "some latitude in following out a standard of furniture and equipment, when additions to that already in use are necessary,"— as they were also when establishing the standard originally,—this presents no reason why the furniture and equipment should be bought in express violation of the Code. Contracts could have been awarded, after due advertisements, etc., and deliveries partially postponed; but nothing of this kind was done. What appellants claim they had the right to do, and what the Code expressly forbids, is to "purchase from a reputable dealer, with whom the school district had dealt for years, and from whom it had learned from experience it could obtain the best service and best prices," without seeking

bids at all. Save as referred to hereafter, the other points which appellants attempt to make under this head of their brief, need no consideration. They are all vain endeavors to justify actions in disregard of the plain requirements of the Code, and seem to show a desire to avoid obeying the law, because they thought it confined appellants to a "too rigid and narrow path." As to this reason, men may well differ, but the courts must enforce the law as it is written.

Appellants invoke also section 13 of article I of the state Constitution, which says that excessive fines shall not be imposed, and urge that the judgments here are obnoxious to that provision. Had they read all of the section they probably would have understood that it related only to criminal proceedings. It says: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." The fine there referred to means "Pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor": 2 Bouvier's Law Dictionary, Rawle's 3d Revision. It cannot have any possible relation to the refusal of credits, in civil proceedings, for public moneys wrongfully expended by a public officer.

Appellants further contend that credits for extras ordered by the architect, during the course of construction work, were disallowed under section 617 of the Code (P. L. 350), because they were not done under contract "after due public notice has been given......asking for competitive bids." We do not understand it to be denied that the original contract was properly awarded, that it authorized the architect to order extra work when necessary and to increase or diminish the contract price accordingly, or that he did order the work, in payment for which defendants were surcharged. Under such circumstances, the credits might have been proper, but we have no way of knowing, from the record now before us, whether or not they were, and the court below must determine this point in accordance with the rule laid down

in Com. ex rel. v. Jones, 283 Pa. 582, 586: "Municipal authorities may, without advertising for bids, provide for work incidental to that covered by the original contract......or for such minor changes and additions thereto as may become reasonably necessary, but cannot so authorize what amounts to a new undertaking. ...... A new departure must not so vary from the original plan, or be of such importance, as to constitute a new undertaking, which the act controls, and where fairness could only be reached through competitive bidding."

Still another point made by defendants may call for further elucidation by the court below. They aver that, in several instances, there were a number of items, each of which was less than $100, was separately contracted for, and was a separate and distinct purchase, but for all of which they were denied credit, because their aggregate exceeded that sum and was included in a single order for payment. Appellees appear to admit the facts as stated, at least as to some items, but assert that the small contracts were so made, without competitive bidding, for the purpose of evading the requirements of the Code. If this be so, the disallowance of the credits was proper; but there is no finding on the point. We might, perhaps, assume that the court below decided it in accordance with appellees' contention, since he charged appellants with the several sums referred to; but in this kind of a case there should be an express finding one way or the other. We cannot overlook the statements in the opinion that "The finding is not made of corruption or dishonesty, or that any of the directors profited as the result of their neglect," and that "It is conceivable that these school directors might have been led into carelessness and neglect of the legal requirements regarding their duties by the neglect or inefficiency of their subordinates, or by incompetent advice." Nor, on the specific point now being examined, can we consider those statements wholly overthrown by the further find-

ing, which the record substantiates, "that during the three years [under review by the court below] the directors neglected to perform the provisions that the law made mandatory upon them, so repeatedly and continuously as to show a course of conduct in disregard and violation of the mandates of the law, and neglected to follow the legally required system of business administration preventative of extravagance, carelessness, favoritism and dishonesty." On the contrary, we think that, taking all these findings together, the case still is one in which we should have a direct determination of the point by the trial judge who saw and heard the witnesses, and for that reason can better determine than we can, whether or not appellants did, in fact, deliberately endeavor to evade the law: Phillips's Est., 295 Pa. 349; Robb v. Stone, 296 Pa. 482; More v. People's Bank & Trust Co., 297 Pa. 252.

There are also a number of instances where the court below surcharged appellants for the money expended by them in the purchase of certain patented articles alleged to have been needed in the schools, and not obtainable elsewhere or at any other price than that paid for them. In this class also, we think there should have been specific findings covering these exceptional instances, which the court may make on the return of the record, followed by its decision as to whether or not, under the facts as so found, the directors were personally responsible.

Appellants also assert that they have been charged twice with an item of $160.70, the first time in Master Line No. 75, in Schedule No. 3-1923-1924, as part of the $560.70 there specified; and the second time in Master Line No. 83, in Schedule No. 4-1923-1924. If this is so, it should, of course, be corrected before final decree.

In their other appeal, appellants object because they were dismissed from office on the petition filed under section 217 of the Code: P. L. 321. It provides that if "the court shall be of the opinion that *any duty* imposed on said board of school directors, which is by the provi-

sions of this act made mandatory upon them to perform, has not been done or has been neglected by them, the said court *shall have the power* to remove said board, or such of its number as in its opinion is proper." Because of its findings, the court below could not properly have done less than decree the removal of all the directors; under what we have said above, since the Act of 1929 has no bearing on the question, we cannot do less than affirm that decree, especially as "this court will consider the matter as before it on certiorari only, and will review the record so far as may be necessary to ascertain whether the court below exceeded its jurisdiction, or abused its legal discretion": Summit Hill School Directors, 258 Pa. 575, 578.

The decree removing the school directors from office is affirmed and the appeal therefrom is dismissed at the costs of appellants. The judgments against the individual school directors are reversed, and the records remitted for further proceedings consonant with this opinion.