Commonwealth *v.* Zang et al., Appellants.

Argued September 30, 1940.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John Duggan, Jr.,* for appellants.

*Earle R. Jackson,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY RHODES, J., December 18, 1940:

Appellants, school directors of the School District of the Borough of North Braddock, were charged in an indictment containing three counts with wilful misbehavior in office, and were found guilty by a jury as indicted. Their motion for new trial was refused, and sentence imposed.

On this appeal appellants' position is that the trial judge should have directed a verdict of not guilty as requested, and the argument is confined to the sufficiency of the evidence.

The indictment charged that appellants did unlawfully and wilfully misbehave themselves in their said office, in that they unlawfully and wilfully purchased paint and painting supplies from one Neff Brothers [Neff Paint & Glass Company], for and on account of the School District of the Borough of North Braddock, involving a sum over $300, without public notice having been given asking for competitive bids, ordered and caused to be made the payment of the sum of $428.74 therefor, and purchased, entered into a contract, and ordered the delivery of the same without the affirmative vote of a majority of all the members of the school board being duly recorded showing how each member voted.

Appellants in their brief admit that the cost of the paint purchased amounted to over $300; that the order was placed without competitive bidding; and that, if this were all that was involved, the violation of the School Code in that respect would admit of no argu-

ment. The evidence discloses that during the summer of 1939 a purchase of paint and paint supplies was made from the paint company in the amount of $424.74. This order represented the combined requirements for the various school buildings in the district, and was given without any advertisement. The paint and supplies were received as ordered, and all of appellants voted to pay the bill. The minutes of the board do not show that there was ever any motion made authorizing the purchase of the paint and the supplies, or the recording of any vote of the members of the board relative thereto. It was testified that at the June meeting of the board in 1939 it was stated some paint would be needed by the school district, but that no formal action or vote was taken.

It is contended by appellants that an emergency arose which necessitated the purchase of this paint; that it would admit of no delay; and that it prevented appellants from following the provisions of the School Code, Act of May 18, 1911, P. L. 309, as amended, 24 PS §1 et seq. In support of this contention reference is made to the testimony that it was impossible to obtain a quorum of members for the transaction of the regular business of the board; and that it was necessary to repaint certain sections of the buildings to put them in proper condition for the reception of children the first part of September. The argument is then presented that, as appellants were charged with the duty of seeing that the buildings were in suitable and proper condition for school purposes, action had to be taken by them which was not in conformity with the requirements of the Code, and that under the conditions appellants' actions were within the spirit of the law. Appellants also assert that the provision (printed in the margin [1])

---

[1] "Provided, That if due to an emergency, a school plant or any part of the same becomes unusable during the school term, competitive bids for repairs or replacement may be solicited from

in section 617 of the School Code, Act of May 18, 1911, P. L. 309, as amended by the Act of May 29, 1931, P. L. 243, § 16, 24 PS § 763, has no application because it limits the prescribed procedure to emergencies arising during the school term, while the contract for paint here questioned was awarded in an emergency which arose during vacation time. Nothing need be said on this matter because we find no basis for saying that there was any emergency.

Assuming that emergencies may arise which require such immediate action as will prevent full compliance with all the provisions of the Code, this record discloses no emergency of that imperative nature. The last regular meeting of the board before the beginning of the school term in September, 1939, was held on June 15, 1939. It is said that, during the months of July and August, 1939, it was impossible to get a quorum for any regular meeting. Appellants, however, knew that portions of the school buildings were painted every summer; yet no action was taken at the regular meeting on June 15, 1939. This customary annual painting was not something that suddenly arose. The situation was known to appellants in sufficient time so that proper action could and should have been taken. If it could be said that there was any emergency, it was caused by appellants' own neglect. Then there were two special meetings of the board in July, 1939, at which a quorum was present. No attempt was made to call a special meeting at any time for the purchase of paint and paint supplies. This could have been done rather than proceed in full disregard of the law.

In the complete absence of definite proof, it would

at least three responsible bidders, and, upon the approval of any of these bids by the State Superintendent of Public Instruction, the board of school directors may proceed at once to make the necessary repairs or replacements in accordance with the terms of said approved bid or bids."

be difficult to believe that school life in the district would not have continued unhampered even if the painting had not been accomplished before the opening of the school term. There was no such immediate action required as if there had been a bursting of a large water pipe, or some similar untoward event. Even then the board would not be justified in ignoring the Code altogether, but only in passing over such of the requirements as could not be fully met. *Chester School District's Audit,* 301 Pa. 203, 219, 151 A. 801. We feel that appellants' attempts at justification "are all vain endeavors to justify actions in disregard of the plain requirements of the Code": *Chester School District's Audit,* supra, 301 Pa. 203, at page 220, 151 A. 801, at page 807.

Appellants continue their argument by pointing out that there was no evidence that any fraud had been perpetrated or favoritism shown in the letting of the contract; that they acted honestly in purchasing the materials from a reputable concern; and that the school district received fair value for the expenditure. These elements are not controlling; nor was it necessary that the Commonwealth establish that appellants acted with criminal intent. It was sufficient for the Commonwealth to prove that appellants wilfully breached a positive statutory duty of a ministerial nature as charged in the indictment. *Commonwealth v. Hubbs (No. 2),* 137 Pa. Superior Ct. 244, 247, 248, 8 A. 2d 618.

Section 617 of the School Code, as amended by the Act of May 29, 1931, P. L. 243, § 16, 24 PS § 763, provides that: "All construction, reconstruction, repairs, or work of any nature, including the introduction of heating, ventilating, or lighting systems, upon any school building or upon any school property ...... where the entire cost, value, or amount ...... including labor and material, shall exceed three hundred dollars (\$300.00) ......, shall be done under contract or contracts to be entered into by such school district

with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids......"

Section 708 of the School Code, 24 PS § 830, provides that all supplies of the second class specified in section 706 of the School Code, as amended, 24 PS § 828, if their cost be three hundred dollars or more, "shall be awarded and purchased only after public notice has been given by advertisement, published once each week for three weeks in not less than two newspapers of general circulation......"

Section 403 of the School Code, 24 PS § 334, provides that the affirmative vote of a majority of all the members of the board of school directors, duly recorded, showing how each member voted, shall be required in order to take action on entering into contracts of any kind, including the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars.

These provisions are mandatory and not matters of discretion. See *Summit Hill School Directors*, 258 Pa. 575, 580, 102 A. 278; *Schuck v. School District of Baldwin Township et al.*, 296 Pa. 408, 411, 146 A. 24. Similar provisions in other statutes requiring competitive bidding have been uniformly construed as mandatory. See *Philadelphia Company v. City of Pittsburgh*, 253 Pa. 147, 152, 97 A. 1083.

Section 516 of the School Code, 24 PS § 364, provides that: "The board of school directors in every school district in this Commonwealth shall have the right to use and pay out, in the manner herein provided, any funds of the district for any and all of the purposes herein provided, subject to all the provisions of this act. The use or payment of any public school funds of any school district in this Commonwealth, in any manner or for any purpose not provided in this act, shall be illegal."

The purpose and public policy behind these provi-

sions of the School Code are to protect the school districts from any possible collusion and dishonesty, and to insure that where material or supplies in an amount over $300 are purchased they will be obtained at the best possible price. See *Commonwealth v. Rosser et al.*, 102 Pa. Superior Ct. 78, 86, 156 A. 751. To permit contracts to be entered into and expenditures made without compliance with the provisions of the act would defeat the very object the legislature had in mind in inserting them. *Summit Hill School Directors*, supra, p. 580. Likewise, to uphold appellants' contentions would be affirming a course of action prohibited by statute, and sanctioning a wilful breach of a duty so prescribed.

The Act of March 30, 1937, P. L. 113, § 1, 24 PS § 337a, to which appellants refer, validated certain contracts theretofore made, and provided, under the conditions prescribed, that no board of school directors, or any members or officers thereof, should be subject to surcharge for the transactions and expenditures validated by that act; but it could not possibly be construed as having any bearing on the wilful breach by appellants themselves of a positive statutory duty after its enactment. The act was not intended to validate attempts at deliberate evasions of the law. *Charleroi Lumber Co. v. Bentleyville Borough School District*, 334 Pa. 424, 432, 6 A. 2d 88.

We are of one mind that the evidence was sufficient to sustain the convictions, and hence was for the jury.

Assignments of error are overruled.

Judgments are affirmed, and the record is remitted to the court below, and it is ordered that defendants appear in the court below at such time as they may there be called, and that they be by that court committed until they have complied with the sentences, or any part thereof which had not been performed at the time each appeal in this case was made a supersedeas.