## Upper Darby Twp. v. Ramsdell Construction Co.

*Robert W. Beatty*, for petitioner.

MacDade, P. J., August 18, 1943.—On January 17, 1943, the Township of Upper Darby, a municipality and township of the first class, presented its petition to this court for leave to pay a claim of the Ramsdell Construction Company. The petition recited that on or about September 1, 1942, the main outfall sewer of

the Township of Upper Darby was discovered to be crushed between Sixty-ninth Street and Old Church Lane, and, as a result, there was a serious menace to health. The State Department of Health notified the township that repairs must be made immediately.

The petition further recited that the sewer was 45 feet deep at the spot where the break occurred, and that the excavation had to be done by machinery. The petition also stated that the township regarded the situation as an emergency and arranged with Ramsdell Construction Company to take a clamshell digger, which is a certain type of steam shovel, from another job and to excavate the sewer. It was agreed to pay a rental of $5 an hour for the digger, which was stated to be the fair and reasonable price. It was found necessary to use the digger for a period of 212.5 hours, whereby the township became indebted to the Ramsdell Construction Company in the sum of $1,062.50. The petition averred that, by reason of the emergency which existed, the township was not able to advertise for bids in accordance with section 1802 of The First Class Township Law of June 24, 1931, P. L. 1206.

Upon presentation of the petition, the court directed that a hearing should be held on March 3, 1943, and that notice of the hearing be given by advertising for two successive weeks in the Chester Times, Weekly Reporter, and Upper Darby Review, which was done. The hearing was held on the day fixed, to wit, March 3, 1943, before the writer, president judge, and the township presented testimony from Albert F. Damon, Jr., chief of the bureau of public works, William Reeder, assistant chief of the bureau of public works, an official from the Ramsdell Construction Company, and the secretary of the township.

No one appeared to oppose the claim at the hearing. The proofs of publication of the notice of the hearing were presented and filed.

Albert F. Damon, Jr., chief of the bureau of public works, testified that the sewer which broke was built in 1917; that there had been 40 feet of ground filled in over the sewer, which crushed the pipe, and raw sewage was running in Naylor's Run and Cobbs Creek, and there were numerous complaints about the situation which was a detriment to public health. Mr. Damon stated that it was impossible to do this excavation by hand; that there was an emergency which should have been attended to at once and there was not time to advertise. When the work was begun it was impossible to tell how extensive the project would be. Mr. Damon testified that the charge was the average charge for the use of equipment of this nature.

William W. Reeder, assistant chief of public works, testified that the sewer had been laid over 20 years ago and that it was crushed by reason of the subsequent filling in to a depth of 40 to 45 feet. He also testified that a health menace resulted, and that it was necessary to use mechanical equipment to correct the break. The pipe was found to be crushed and was replaced. Mr. Reeder testified that the number of hours for which claim of rent was made for the crane had been checked and that the charge was fair. At the time the work was begun it was impossible to tell how long it would take and how much it would cost. Mr. Reeder also stated that it was "definitely an emergency".

Fred L. Ramsdell, of the Ramsdell Construction Company, testified that he made the arrangements to furnish the crane to the township for $5 an hour, which he said was below the usual charge and was made to help out the township in an emergency, and he verified the bill.

James E. Malone, secretary of the township, was called and verified from the minutes a resolution of the township authorizing the proper officers to petition the court for approval of payment of the claim.

Section 1802 of The First Class Township Law provides that all contracts or purchases involving the expenditure of over $500 shall be in writing and shall be made only after notice to bidders has been published in newspapers of general circulation, and further provides that the contract shall be awarded to the lowest responsible bidder and that any contract made in violation of this provision shall be void.

Statutory requirements that municipalities must have contracts in writing and advertise for bids have been held not to apply to a situation where there is an emergency. In a recent opinion of this court, in the case of Underwood Corp. v. Chester Municipal Authority, 49 D. & C. 295 (Ervin, J.), the effect of section 10 of the Municipal Authorities Act of June 28, 1935, P. L. 463, was considered. This section also provided that any construction project, the cost of which exceeded $500, should be by contract awarded to the lowest responsible bidder after advertisement for bids. Plaintiff brought suit for the sum of $6,128.21 for services rendered in repairing a pumping engine which was essential for the maintenance of the water supply of the City of Chester. An affidavit of defense raising questions of law was filed. The court referred to many cases from other States, and said (p. 298) :

"Other courts have held that where the required work is unsuited for competitive bidding or where the work is performed under circumstances creating an emergency the statute was not intended by the legislature to apply".

The court stated that, in its opinion, after the pump had been dismantled, an emergency existed which imperiled the health and safety of the citizens of the City of Chester and by reason of the circumstances entered judgment in favor of plaintiff and against defendant.

In discussing a similar requirement of the School Code of the Commonwealth of Pennsylvania, the appel-

late courts of this State have indicated that, in cases of emergency, it is not necessary to comply with all the requirements of the code: Chester School District's Audit, 301 Pa. 203, 219; Commonwealth v. Zang et al., 142 Pa. Superior Ct. 566, 569. The principles enunciated in these cases would seem necessarily to be sound and, if a municipality were powerless to remedy an actual emergency by reason of the statutory prohibition against making contracts without advertising and bidding, the municipality could be damaged to an extent far greater than the damage which the statutory requirement was designed to prevent.

The important thing, therefore, in these cases would seem to be the determination as to whether or not there was an emergency. In the present case the facts seem clear: a sewer burst which permitted sewage to escape and which, of course, would constitute a serious menace to health. Complaints had been made by the State Department of Health and the officials of the township charged with the responsibility of maintaining the service all testified that there was a real emergency. It also appeared that the amount claimed for the rental of the machinery necessary to correct the emergency was not only fair and reasonable but was less than the usual market price. Under these circumstances, the township should be permitted to pay the claim of the construction company for the rental of the machinery.

### Conclusions of law

Section 1802 of The First Class Township Code provides that all contracts made by any township involving expenditure of over $500 shall be in writing and shall be made only after notice for bids has been published in newspapers of general circulation, and every contract awarded upon competitive bids shall be awarded to the lowest responsible bidder.

This statutory requirement does not apply to a situation where there is an actual emergency and where there is not sufficient time to award a contract after advertising for bids.

*Order*

And now, August 18, 1943, the above case having come on to be heard by the court in banc, it appearing that an emergency existed which required the securing of machinery, and that the claim of the Ramsdell Construction Company is fair and reasonable compensation for the rental of the machinery and equipment involved, and that the officers of the Township of Upper Darby acted in good faith, and it further appearing that the notice of the presentation of the within petition and of the hearing was given by advertising in newspapers of general circulation, and no one appearing in opposition thereto, it is hereby ordered and decreed that the Township of Upper Darby be authorized and directed to pay the Ramsdell Construction Company the sum of $1,062.50, as prayed for in the petition filed in the within proceedings.