## Scranton School District Audit (No. 1).

Argued April 11, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. Julius Levy,* with him *Robert G. Coglizer* and *John R. Edwards,* for appellants.

*S. Augustus Davis* and *Wallace G. Moser,* with them *James Hiscox,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 27, 1946:

This is an appeal by school directors in Scranton from a surcharge imposed by the auditor for the school district and sustained by the Court of Common Pleas of Lackawanna County.

In September, 1942, the Scranton School District purchased an athletic park of approximately ten acres for the sum of $36,000. The school directors, upon examining the property, found that it was necessary to drain and grade the field and to make repairs to the grandstand, dressing and shower rooms, and ticket office. They were eager to get the work done in time for the football season, so, instead of complying with the mandate of section 617 of the School Code of May 18, 1911, P. L. 309, that every contract in excess of $300 for the "construction, reconstruction, or repair of any school building, or work upon any school property, shall be awarded to the lowest and best bidder, after due public notice has been given, upon proper terms asking for competitive bids," they had the repairs made by a force of workmen regularly employed by the district for maintaining its school properties in repair. Secondhand material from dismantled school buildings was used and other material purchased as the work progressed. From time to time the directors approved the vouchers pre-

sented to them for labor and material; each of these, save one, was in an amount less than $300, but they totalled, for the work on the grandstand, $1528.04; for the work on the dressing and shower rooms, $5659.25; for the steam and plumbing installations, $2044.07; for repairs to the ticket office, $498.44; for draining and grading the field, $1838.03; and for repairing the sidewalk, $389.08. The directors also bought some folding chairs for use at parent-teacher meetings at a cost of $716.72. A surcharge was imposed for the aggregate of these items, $12,673.63.

The directors offered a number of defenses,—that they were within the law in having the repairs made by their own workmen instead of employing a contractor, that each single expenditure for labor or material was under the maximum prescribed by the Code, that the work was done only as found necessary from day to day and they did not realize the total outlay would be as great as it turned out to be, that all the expenditures were made with the approval of the Solicitor, that they acted in ignorance of the precise requirements of the law and without any fraudulent intent, and that, in any event, it would have been futile to attempt to give out the work on competitive bidding during the period of the war. Before the passage of the Act of May 29, 1931, P. L. 243, section 13, hereinafter discussed, none of these alleged defenses would have been of any avail. While there is no valid objection to a school district employing workmen to maintain the school properties in good order so far as the repairs are more or less trivial and necessary for the ordinary upkeep of the buildings, any repair work requiring an expenditure of more than $300 may be made only, as the School Code provides, under a contract awarded as the result of competitive bidding. That the individual vouchers were in amounts less than $300 furnished no excuse for the action of the directors, for it must soon have become apparent to them that the repairs as a whole would run into large figures and that

the work could not properly be regarded as a series of separate jobs unrelated to a general plan of reconstruction: *Summit Hill School Directors,* 258 Pa. 575, 102 A. 278; *Chester School District's Audit,* 301 Pa. 203, 221, 151 A. 801, 808. The fact that the directors acted with the approval and on the advice of the Solicitor did not exempt them from the duty of obeying a mandatory duty imposed by law: *Crane's Appeal,* 344 Pa. 624, 627, 26 A. 2d 457, 459. Neither would their ignorance of legal requirements nor the innocence of their motives serve as a defense: *Likovich Appeal,* 347 Pa. 40, 42, 31 A. 2d 543, 545. No proof was offered to show that it was impossible to obtain competive bids because of war conditions. As to the purchase of the chairs, section 707 of the Code required that sealed quotations be obtained from two or more dealers and the contract given to the lowest bidder; that provision was ignored by the directors although it is true that they made the purchases from reputable dealers and at the lowest wholesale prices.

This brings us to a consideration of section 13 of the Act of May 29, 1931, P. L. 243, amending section 517 of the Code. In *Chester School District's Audit,* 301 Pa. 203, 214, 151 A. 801, 805, there was an expression of sympathy with school directors surcharged in a case where the district did not suffer any loss from their breach of duty and they did not individually make any gain, and it was intimated that an amelioration of the law in that regard might properly be sought from the legislature. It was probably because of this suggestion that section 13 of the Act of 1931 was enacted. It provided that ". . . on appeal from an auditor's report, it shall be within the discretion of the court having jurisdiction of the matter to sustain or not to sustain a surcharge where it appears that the appellant or appellants acted honestly and in good faith for the best interests of the school district, and where no loss or damage to the school district resulted from the action of such appellant or appellants." No doubt the legislature was im-

pressed by the fact that school directors, serving without remuneration and apt to be laymen unacquainted with the details of the statutory and decisional law, had frequently been surcharged in large amounts because of failure to comply with legal requirements even though that failure resulted from ignorance and misunderstanding rather than from any wilful intent to evade the law or to obtain some improper advantage for themselves or others. Be that as it may, it is clear that this amendatory act made a drastic change in regard to the liability of school directors in cases where there was no corrupt motive and where the district did not suffer by reason of what the directors had done.

The court below, in the present instance, affirmed the surcharge which the auditor had imposed, but the discretion vested in it by the act to sustain or not to sustain a surcharge is subject to review on appeal; it is not to be exercised in an unreasonable or arbitrary fashion. That here the directors acted "honestly and in good faith for the best interests of the school district" cannot be controverted. There is not a scintilla of evidence, or indeed contention on the part of any one, that they sought any gain for themselves or were guilty of any favoritism; they were apparently motivated by the one desire to get the work done as quickly and as cheaply as possible. While they undoubtedly violated the School Code the court below stated in its opinion that "we believe the majority of the directors when they say they had no idea that there was any violation of the law in what they were doing." Even if their failure to comply with the provisions of the Code had been a conscious dereliction on their part it would not necessarily have stamped their action as dishonest. Honesty is concerned with the moral rather than the legalistic import of an act; these directors were not guilty of any moral turpitude.

There remains one question under the Act of 1931:— did any loss or damage to the school district result from the action of the directors? The burden to show that

there was no such loss or damage was upon them (Act of May 13, 1915, P. L. 311; cf. *In re Auditors' Report*, 245 Pa. 17, 21, 91 A. 517, 518; *Chester School District's Audit*, 301 Pa. 203, 212, 151 A. 801, 805), but in our opinion they sustained that burden. It is true that in construing the Act of June 9, 1911, P. L. 865,—which provides that any officer of a school district whose act or neglect shall have contributed to the financial loss of the district shall be surcharged with the amount of such loss,—it has been held that by "financial loss" was meant the entire amount of any payment illegally made and not merely the difference between the sum paid and the actual value of the work done: *Hanover Township School District's Audit*, 265 Pa. 157, 164, 165, 108 A. 656, 658; *Chester School District's Audit*, 301 Pa. 203, 214, 151 A. 801, 805; *Lower Nazareth Township Supervisors' Appeal*, 341 Pa. 171, 19 A. 2d 92; *Likovich Appeal*, 347 Pa. 40, 46, 31 A. 2d 543, 546. A similar construction cannot, however, be given to the words "loss or damage" as used in section 13 of the Act of 1931, for otherwise the amelioration in the pre-existing law which this amendment was obviously intended to effect would be wholly illusory and unavailing; if every payment made in violation of the exact requirements of the Code constituted the "loss or damage" to the district no exemption from surcharge would ever be possible even though the directors had acted honestly and in good faith. Without attempting to recite in detail the testimony in the present record we are satisfied that if the directors had complied with the law by having the repairs made by a contractor as the result of competitive bidding the amount which the district would have been obliged to pay would have been greater, not less, than the sum actually expended.

To summarize therefore,—we are of opinion that prior to the Act of 1931 the surcharge imposed upon these directors would have been not only proper but inevitable, but by virtue of that act they were entitled, be-

cause of their honesty of purpose and because no loss or damage resulted to the school district, to be relieved from the imposition of a surcharge.

We may add that the directors claim exemption also under the Act of May 15, 1945, P. L. 538, which, supporting and extending the policy adopted in section 13 of the Act of 1931, provides that no official of any political subdivision should be surcharged for any act, error or omission in excess of the actual financial loss sustained by the political subdivision by reason thereof, provided there was no fraud or collusion on the part of such officer. This act was to be effective immediately upon enactment, but since at that time a judgment nisi had already been entered against these directors we think that their rights and those of the school district and the taxpayers are here properly determinable under the Act of 1931 and not the Act of 1945.

The appeal of the school directors is sustained, and the judgment, so far as it imposes a surcharge against them, is reversed; costs to be paid by the school district.