## Lansdowne Bank and Trust Company's Case.

Argued April 21, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

382

*Raymond E. Larson,* with him *James P. McCormick, Gerald F. Flood,* Special Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellant.

*Bruce W. Long,* with him *William Taylor,* for appellee.

OPINION BY MR. JUSTICE BARNES, June 26, 1936:

This appeal is taken from the final decree of the court below dismissing exceptions to its adjudication upon the first account of the Secretary of Banking as receiver of the Lansdowne Bank and Trust Company, of Lansdowne, Delaware County. In the adjudication a sinking fund savings account on deposit with the bank, belonging to the Edgmont Township School District was awarded a preference over other depositors. Whether this claim should be preferred is the principal question for our consideration. It is contended on behalf of the appellee School District that the bank was a trustee ex maleficio of the funds on deposit, which have been traced sufficiently to entitle it to the preference awarded under the terms of the adjudication, as confirmed by the court en banc.

The facts are not in dispute. They are stipulated in writing between the parties, and the portion thereof material to this issue may be stated as follows:

On January 5, 1927, the School District designated the Lansdowne National Bank as the depository of a sinking fund known as "Sinking Fund No. 2 of the Edgmont Township School District." Before the first deposit was made in this account, the Lansdowne Bank and Trust

Company took over all of the deposits, liabilities and obligations of the Lansdowne National Bank, on August 1, 1927. The first deposit in the Sinking Fund was made by the School District on November 7, 1927, in the sum of $1,153, and deposits were made in the same amount each succeeding year down to and including 1931. Neither the Lansdowne National Bank nor the Lansdowne Bank and Trust Company, furnished a bond to the School District before receiving the above deposits, as provided by section 509 of the School Code of 1911, P. L. 309.[1]

Each of the five annual deposits of $1,153, were made by checks duly signed by the proper officers of the School Board. They were made payable to the Lansdowne National Bank endorsed by the Lansdowne Bank and Trust Company, and forwarded to the Philadelphia National Bank for collection. When the checks were paid the Philadelphia National Bank credited the Lansdowne Bank and Trust Company's deposit account with the amount of these checks.

On December 18, 1931, the Secretary of Banking took possession of the assets and property of the Lansdowne Bank and Trust Company. At that time the School District had on deposit the sum of $3,135.30. From November 9, 1927, the date of the first check which was forwarded to the Philadelphia National Bank for collection to December 18, 1931, when the Secretary of Banking took possession of the bank, the lowest balance in the

---

[1] Section 509 of the School Code reads as follows:

"The board of school directors in any school district in the Commonwealth may designate one or more banks or trust companies as a depository or depositories for its school funds . . . and such depository before receiving any of the school funds shall furnish a proper bond, in such amount and with such surety or sureties as may be required, to be approved by the board of school directors and conditioned upon the faithful keeping, paying out and accounting for all of the school funds and property of said school district that may come into its hands."

Lansdowne Bank and Trust Company's deposit account at the Philadelphia National Bank was $3,087.71, this being the balance as of May 14, 1931. However, between May 14, 1931, and December 18, 1931, the School District made its fifth and last deposit in the sum of $1,153. On or about December 18, 1931, the Philadelphia National Bank seized this deposit and applied it upon the indebtedness due it by the Lansdowne Bank. Later, the Philadelphia National Bank sold the collateral belonging to its debtor, and satisfied the debt in full, leaving a balance in favor of the Lansdowne Bank and Trust Company in the sum of $19,866.63, of which $15,366.63 was remitted to the Lansdowne Bank on February 9, 1932. The difference amounting to $4,500 was retained by the Philadelphia National Bank to cover a pending claim.

When the first account of the Secretary of Banking as receiver was filed he listed the school board claim as a "depositor's account." Upon exceptions of the School District, testimony was then taken, with the result that the funds were traced to the Philadelphia National Bank as described. The court sustained the exceptions and held the School District to be entitled to a preference. Thereupon the Secretary of Banking as receiver of the Drexel Hill Title and Trust Company, a depositor in the Lansdowne Bank, and as such a party in interest, took this appeal.

It is the first contention of appellant that, as the Lansdowne National Bank was designated as the School District's depository, and not the Lansdowne Bank and Trust Company, section 509 of the School Code has no application to this case. It asserts there was here created only the ordinary relation of debtor and creditor unrestricted by the provisions of section 509. While it is true that the formal resolution of appellee designated the National Bank and not the Trust Company as depository, nevertheless the former was taken over by the latter before any School District deposits had been made. The well settled principle applies that where one

corporation purchases the business and assets of another, it succeeds to all the other's rights and is bound as well by all its obligations: *Maxler v. Freeport Bank et al.,* 275 Pa. 510; *Buist's Estate,* 297 Pa. 537. As the Trust Company succeeded to the privilege of acting as the School District's depository, and as both parties affirmatively showed their consent that it should act as such, the one by the deposit of money and the other by its receipt, the Trust Company, or any other party in interest, is precluded from denying that the provisions of section 509 apply, which requires the furnishing of a bond.

It is unnecessary to discuss at length the further contention of appellant that this section of the Code does not make it mandatory upon the School Districts to designate a depository. Although the section does employ the phrase "may designate . . . a depository," this expression has often been construed to have been employed by the Legislature in the more peremptory sense of "shall," and to impose a duty, where under other circumstances a merely permissive act is intended: *Endlich, Interpretation of Statutes,* section 310; *Com. ex rel. Hamilton v. Select and Common Councils of Pittsburgh,* 34 Pa. 496, 513; *Words & Phrases* (1st Series) 4420. We have no hesitancy in holding that the provision here is mandatory.

We cannot agree with the contention of appellant that the Legislature intended to impose restrictions upon the deposit of the general funds of the School District, but not upon its sinking funds. Section 509 provides that a bond is to be furnished before receipt "of any of the school funds," and its language is certainly inclusive of sinking funds of the District. It is argued that since section 519 of the School Code specifically permits the deposit of sinking funds "in such designated depository as offers the best rate of interest, security and safety," that this indicates a legislative intent that sinking funds may be placed in a depository other than one which is required to furnish a bond. It is a well recognized prin-

ciple of statutory construction that a statute is to be read as a whole: *Bonsall's Est.,* 288 Pa. 39; *Commonwealth v. Benton Twp. School Dist.,* 277 Pa. 13. Section 519 does not define a "designated depository" and reference must therefore be made to section 509 to ascertain the meaning of the phrase. It is in plain terms there provided that the bank designated as the depository by the School Board "shall" furnish a bond. It seems too clear for argument that section 519 of the School Code, —the particular section relating to School District sinking fund deposits, must be read in connection with section 509 thereof,—the section relating to all School District deposits, in this general law, designed to regulate completely, so far as a statue may, the administration of the public school system of the Commonwealth.

This brings us to the consideration of the question whether the failure on the part of the Bank to furnish a bond to the School District renders it a trustee ex maleficio as to such funds which the Bank had on deposit.

As we have seen, the mandatory language of the School Code clearly imposed an obligation upon the Trust Company to furnish a depository bond "before receiving any of the school funds." Under the circumstances, the acceptance of the deposits with knowledge of its failure to comply with the provisions of the Code was a wrongful act. The Trust Company must be presumed to be familiar with the requirements of the statute upon the familiar principle that public funds are received by a bank with knowledge, actual or constructive, of the essential statutory requirements for the deposit thereof.

We have consistently held that the provisions of the School Code must be strictly construed. In interpreting sections thereof from time to time, we have repeatedly decided that, since the various requirements of the act were designed and intended by the legislature for the purpose of safeguarding public funds, they must be construed so as adequately to protect such funds. In *Georges Township School District's Case,* 300 Pa. 39, 43,

Mr. Justice WALLING, speaking for this court, said that the provisions of the School Code indicate ". . . a legislative purpose that school funds shall be safely secured, and place a bank which has accepted the office of a depository in a position different from what it occupies toward an ordinary depositor." In *Valley Deposit and Trust Co. of Belle Vernon,* 311 Pa. 495, 498, we held that municipal bodies could not assert any preference over ordinary depositors in closed banks, and we stated that while "it has never been held, in this State, that the right to exercise this power to assert priority of payment passed by implication to any subordinate governmental agency. . . . The legislature has afforded the necessary protection to local funds by expressly providing *for the adequate bonding of township and borough treasurers and the depository of school funds."* It is a fundamental rule of law that a person who receives money or property from another by some wrongful act becomes a trustee ex maleficio, and especially is this true where the funds are public moneys. While there are no decisions of our appellate courts which hold that the status of a bank which receives public funds without furnishing a bond, contrary to an express statutory mandate, is that of a constructive trustee, the question has been settled in other jurisdictions. In *Reichert v. United Savings Bank,* 239 N. W. 393, the facts were almost identical with those with which we are here concerned. Defendant bank or a predecessor bank merged with it, had been named as depository of school money. No bond, as required by statute, had been given. The court held that a trust was created, saying ". . . *public funds received by a bank with knowledge actual or constructive,* that the essential statutory requirements for the deposit thereof have not been complied with, are impressed with a trust ex maleficio . . . When a deposit of public funds is made in violation of law, title does not pass to the bank, and if such funds can be traced or identified they will be restored to the lawful owner. To hold other-

wise would not only defeat the whole theory of a trust ex maleficio, but would enable the actual possessor of the public funds so deposited to take advantage of his own wrong." See also cases of unlawful deposit referred to in the footnote to Mr. Justice LINN'S opinion in *Pittsburgh's Appeal*, 316 Pa. 125, at page 128.

The protection intended to be afforded to public moneys cannot be lost through dereliction on the part of the depository charged with the duty of furnishing the bond. We are therefore of opinion that the failure of the trust company to comply with the mandatory requirements of the Code before receiving the deposits of this school district was such conduct as made the receipt of such deposits a wrongful act, and the trust company became a trustee ex maleficio as to such funds.

But the right to a preference is not established by the mere showing that there was a constructive trust imposed on the money received by the trust company. As stated by Mr. Justice LINN in *Pittsburgh's Appeal*, supra, (p. 127) : "Trust relationship, alone, does not give priority; that depends on identification of the property." An unlawful deposit received from a municipality must be traced just as in the case of any other deposit preferred upon the ground of trust. The funds must be shown to exist in the same or a changed form, and must be identified as in some specific fund or property now in the hands of the receiver.

The facts here developed show that the sinking funds were deposited in the trust company in the form of checks. The checks were sent to the Philadelphia National Bank for collection, which credited the amount thereof to the trust company. This sufficiently established the credit as the direct result of the deposits unlawfully received. "It is not necessary that the very dollars received be identified, for it is the identity of the fund, not of the bank notes or pieces of coin that went into it, that controls." *Mehler's Appeal*, 310 Pa. 25, 29, and cases therein cited. No mere change of form

can divert the funds of the trust so long as they can be traced and thus identified. A transmutation of a check, the subject of a trust, into a credit has often been held sufficiently to identify the credit as the new res to which the trust may attach: *Frieberg v. Stoddard,* 161 Pa. 259. The facts show that this credit never fell below the amounts of the checks so received: *Webb v. Newhall,* 274 Pa. 135; *Groff v. City Savings Fund and Tr. Co.,* 46 Pa. Super. Ct. 423. This makes possible the application of the so-called "lowest balance theory," that is the lowest amount on deposit or to the credit of the trust company at the Philadelphia National Bank during the period that the trust company was receiving the deposits of school funds. This sufficiently identifies and ear-marks the funds.

It is urged that since the Philadelphia National Bank seized this credit in partial satisfaction of its secured debt, such act caused a final destruction of the trust res. In utilizing the credit, the Philadelphia National Bank released as a source of available payment for its debt so much of the collateral as it had in its possession for the security of this debt. To the extent that it used the credit, the collateral as proceeds thereof was relieved from the payment of the debt, and the amount received by the receiver of the trust company was accordingly increased. This is sufficient to entitle appellee to repayment from the proceeds of the collateral received by the trust company.[2]

Appellee has successfully established that the trust funds, in changed form, still remain in the possession of the Lansdowne Bank and Trust Company, and is entitled to a preference.

Order of the court below is affirmed, the costs to be paid out of the fund for distribution.

---

[2] In reference to tracing trust funds in closed banks, see: *Eppinger v. Allen et al.,* 8 D. & C. 321; *In re Hamilton Trust Co.,* 17 D. & C, 633; *In re United Security Trust Co.,* 19 D. & C. 303.