## In re Tremont Township School Directors

624

*Kilker & Kilker*, for petitioners.

*Joseph G. Seesholtz* and *H. O. Bechtel*, for respondents.

PALMER, J., December 2, 1938.—This is a petition to remove school directors of Tremont Township for alleged failure to perform certain duties made mandatory upon them by law. Answer thereto was filed by defendants. The case was assigned to the writer of this opinion for the purpose of taking testimony, stating findings of fact, conclusions of law, and a form of decree nisi for the action of

the court in banc after argument upon the exceptions, if any be filed. . . .

This proceeding is under section 217 of the School Code of May 18, 1911, P. L. 309, 24 PS §180, et seq. which empowers the court to remove school directors for refusal or neglect to perform any duty made mandatory upon them to perform by the School Code. The removal of a school director under this section is not made mandatory upon the court, assuming proof of neglect by a director to perform his duty, but lies within its sound discretion: Summit Hill School Directors, 258 Pa. 575, 578, 579.

In the present case the petition sets forth a number of alleged breaches of legal duty on the part of the five respondents under several headings. Some of these, in our opinion, were sustained by the evidence produced on behalf of petitioners. Despite this fact, however, we do not feel justified in invoking the severe penalty imposed by the act. In our opinion, and we find no decision to the contrary, the court should not avail itself of the power to remove these elected officials unless it is convinced that the technical violations of the mandates of the School Code have been motivated by an intent to defraud or corrupt, or that the violations have resulted in financial loss to the school district. Violations which result from mistaken judgment on the part of the directors and which have not caused harm to the taxpayers of the district in any manner should not be punished in so drastic a manner as envisioned by this act. As stated by the court in In re Removal from office of O'Connell et al., 23 Luz. L. R. Rep. 447, at page 450:

"After careful consideration of all the charges and the testimony adduced, we conclude that the irregularities complained of and proven at trial are not of such a character as to warrant or require a removal of the directors involved. In this conclusion we are not to be understood in sanctioning any of the methods employed that are not in strict accordance with the provisions of the Code. On the contrary, such practices are condemned, but in the

present instances are held not to involve fraud or wilful disregard of law, and the irregularities complained of have resulted in no financial losses to the district." See also Pittston City School District's Directors, 6 D. & C. 545.

In the instant case, likewise, we severely condemn many of the practices adopted by respondents and emphasize that the dismissal of the petition to remove them should not be construed as a condonation of the many irregularities committed by them in their official capacity. We are impressed, nevertheless, with the fact that we have found nothing in the record which would lead us to believe that respondents neglected to perform several of their mandatory duties wilfully, or with intent to defraud the district or to profit thereby. Nor was any proof presented that the district suffered any pecuniary loss as a result of the irregularities.

The first violation of the School Code alleged in the petition relates to the failure of the school directors to require bonds from the banks designated by them as a depository for funds of the school district. Section 509 of the School Code, as amended by the Act of June 1, 1933, P. L. 1152, 24 PS §461, provides that a bond "may" be required. However, there is no doubt that this is a mandatory provision of the code. See Lansdowne Bank & Trust Company's Case, 323 Pa. 380 (1936). Respondents admit that they deposited funds of the school district in the designated depositories for the years 1934-35 and 1935-36 without first having obtained bonds as required by law. In extenuation of the violation of the code in this respect, it was shown that a request had been made of a director of one of the depository banks for such a bond but that the request was ignored; that due to the economic depression of the times the banks in that vicinity were unable to furnish these bonds; that a bond was secured from the sole depository of school district funds for the year 1936-37. Of course, none of these facts excuses the violation. But insofar as this proceeding is con-

cerned, we attach great importance to the fact that although bonds were not secured from the depositories, all funds deposited with them were strictly accounted for and kept and paid out pursuant to the orders issued by the school board. Thus, the irregularities complained of resolve themselves into mere technical violations of the code which resulted in no loss to the school district. We may add that there, as in the case of other violations which we discuss in this opinion, respondents were not motivated in disobeying the mandatory provisions of the law by any evil or even selfish motive. At most, they can be accused of negligence.

We have been able to discover but one decision involving a violation of this section of the code in a proceeding of this kind. In In re Directors of Throop School Dist., 33 Lack. Jur. 162 (1932), the directors had violated a provision of section 509 prohibiting the depositing in any bank of school funds in an amount greater than one third of the bank's capital stock and surplus. The court in that case refused to remove the directors because of that violation inasmuch as orders were issued immediately against the account reducing the balance to the legal maximum. The violation was held to be a mere technical one which had caused harm to no one.

Respondents are accused of having violated the provisions of section 403 of the School Code, which provides that "The affirmative vote of a majority of all the members of the board . . . duly recorded, showing how each member voted, shall be required" in order, among other matters, to designate depositories for school funds and to enter into certain types of contracts. The evidence shows that at a meeting held July 6, 1936, a contract for purchase of supplies was awarded and a depository designated, both matters being voted for by all the members of the board. The vote of each member was not noted on the minutes of that meeting. At the following meeting of the board, however, the error was noted upon the reading of the minutes of the preceding meeting. The secre-

tary was then instructed to remedy the defect. This was done by him by noting on the minutes of the latter meeting the fact that all members had voted for both motions. In our opinion, this satisfied the requirements of the act quoted above. At most, it would constitute a purely technical violation of no moment.

Next are alleged several violations of the code with respect to awarding contracts for school supplies, furniture, and related items as well as for the construction of a school garage and a pipe line. The alleged irregularities complained of relate to the manner of soliciting competitive bids and giving public notice.

Section 706 of the School Code classifies school supplies into first and second class supplies, the first class comprising school apparatus and furniture, the second class comprising maps, globes, and all other school supplies. By other sections of the act, first class supplies costing less than $100 and second class supplies costing less than $300 may be purchased by the board without the necessity of notice and solicitation of bids as required where the purchases exceed these amounts. Many instances of purchases in both classes *totaling* more than the said amounts which were made by respondents without fulfilling the requirements of notice and solicitation of bids are alleged in the petition as grounds for removal. Respondents contend that the code does permit purchases of supplies in amounts less than $100 or $300 as the case may be, without the necessity of requesting competitive bids and public notice even though the total cost of these supplies during the entire school year greatly exceeds these amounts. In our opinion, the contention of respondents is well founded. See Standard Scientific Co. v. Dunmore School Dist., 26 Lack. Jur. 267 (1925). There it is said that each order is to be considered by itself and not lumped for this purpose.

Petitioners argue that inasmuch as the contemplated expenditures for supplies for any school year are set forth in the annual budget at the beginning of each school year,

the board may not buy these supplies piecemeal. They argue further that a series of purchases each less than the minimum amount evinces an intention to evade the provisions of the act relative to solicitation of bids and public notice. We agree that this may be true in a particular case, but it is not necessarily true of every case. The school directors must obviously be permitted a certain amount of discretion in matters of this kind. In the present case, we do not believe that respondents made numerous small purchases for the purpose of evading the requirements of the act. It should be noted, first, that numerous purchases were made in amounts exceeding the minimum amounts. (There are also allegations concerning these purchases which are discussed below.) More significant is the fact that it is nowhere alleged, nor does the evidence show, that the purchases so made were not made from a reputable firm or that the prices were not reasonable or that the prices paid were higher than would have been the case had the purchases been made in bulk. On the other hand, it is contended by respondents that they deemed it a matter of good business practice to purchase supplies as they were needed rather than attempt to anticipate the needs for the entire school year. We have no basis for disputing this contention. We deem this a matter well within the discretion of the school directors. We are unable to perceive any violation of the code with respect to these purchases.

Petitioners rely on the decision in Summit Hill School Directors, supra. In that case the school board had awarded a contract for alterations to a school building. The amount involved was less than $300 and therefore necessitated no competitive bidding. However, after work was begun, it was discovered that additional repairs were needed. Thereupon the directors directed the contractor to proceed with the additional work as well. The total cost of the work was thus well over $300. No public notice was given nor competitive bids solicited. It was held that the directors had violated the provision of the code relat-

ing to these matters. It will be noted that here but a single contract for a single matter was involved. It did not involve the question of lumping separate purchases. This case is not authority for the proposition that separate purchases of supplies must be considered as a single transaction for the purpose of determining whether bids must be solicited and public notice given.

It is contended by petitioners that in awarding a contract for the construction of a garage in which to house a school autobus, at a cost of $715.98, respondents violated provisions of the code respecting the requirement of public notice asking for competitive bids as well as the provision requiring the posting of a materialmen's bond by the successful bidder. Section 617 of the School Code, as amended by the Act of May 29, 1931, P. L. 243, 24 PS §763, requires that:

"All construction . . . upon any school building . . . where the entire cost . . . shall exceed . . . ($300.00) . . . shall be done under contract or contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids".

Due public notice under section 617 has been construed to mean notice such as is required by section 706 of the School Code. See opinion of Attorney General, Advertisement for Bids by School Board, 14 D. & C. 633. Section 708, which applies to bids on second class supplies, provides that contracts "shall be awarded . . . only after public notice has been given by advertisement, published once each week for three weeks in not less than two newspapers of general circulation: Provided, That in any district where no newspaper is published, said notice may, in lieu of such publication, be posted in at least five public places . . .".

We see no merit in the contention that this was changed by the amendment to section 707 of the School Code, as amended by the Act of 1931, supra, which applies only to situations where publication is required in one newspaper.

Since no newspaper is published in Tremont Township, respondents solicited bids and posted notices as provided in the act. The dispute here concerns the manner of solicitation of bids and posting of notices. It was testified by several of respondents that at the meeting at which it was decided to erect the garage each of them was handed notices which were to be posted by them, and that they posted these notices at various public places in the district. We have concluded, after studying the testimony, that the requirements of the act were fulfilled in this respect. Although there is some question as to the manner of solicitation of the bids, the evidence is undisputed that three bids were received and that the bid of the successful bidder was the lowest of the three. Petitioners contend that the entire transaction was not bona fide and point for evidence supporting this contention that the two unsuccessful bidders were in fact employed by the successful bidder in the construction of the garage. Although this fact is rather suspicious, we are unable to say after considering all the circumstances involved, that the transaction was fraudulent or that the three bids were not bona fide.

Respondents admitted that no materialmen's bond was furnished by the successful bidder for the erection of the garage. This, of course, constituted a violation of a mandatory provision of the School Code. Respondents contend that no bond was necessary in this case for the reason that the contractor, being in the building supply business, supplied his own materials, and for the reason that no subcontractors were used in the construction of the garage, thus obviating the necessity of any bond. This does not constitute a legal defense. The requirement is a mandatory one. However, the contention of respondents, although not a legal defense, indicates their reason for disobeying the law. Again we are impressed with the fact that the district suffered no loss because of the lack of a bond. There is no evidence that all materialmen and laborers were not paid by the contractor.

The petition contains several paragraphs alleging irregularities in the awarding of contracts for the purchase of school supplies where, because of the amount involved, public notice inviting competitive bids was required under the act. In each case the evidence adduced shows that bids were solicited from dealers, that bids were received from at least two dealers, and that notices inviting bids were posted by members of the board in public places as required by the code. There is nothing in the record to indicate that all of these transactions were not entirely legitimate. The dispute concerning the manner of posting notices has already been discussed. We are of the opinion that notice was sufficient.

We attach great importance to the fact that there are neither allegations nor proof that the cost of the garage or any of the articles purchased was excessive or that respondents profited in any respect from these transactions.

Respondents are charged with failing to properly and adequately maintain a sinking fund for the liquidation of the bonded indebtedness of the district. The evidence shows that a sinking fund was created for this purpose but that the payments made into it were substantially less than was required to meet principal and interest obligations. However, a study of the evidence leads us to the conclusion that the irregularity was technical rather than substantial. A special tax was levied and collected for sinking fund purposes. The funds so collected were not paid entirely into the sinking fund but were divided between the general fund and the sinking fund. When it became necessary to meet the bond obligations, necessary funds were transferred from the general fund to the sinking fund and the necessary payments made from the latter. The record does not disclose the reason for this highly irregular method of public financing and we are unable to divine it. We are convinced that it was due to negligence on the part of respondents. Nevertheless, all obligations were met as they matured from funds col-

lected for this purpose. The taxpayers of the district suffered no loss because of this novel procedure. While we do not recommend this devious method of meeting bonded indebtedness to school directors, we do not believe the irregularity provides us with sufficient basis for removing respondents. We find no wilful evasion of the requirements of the School Code.

A further reason advanced by petitioners for the removal of respondents was on the basis of surcharges made against them by this court in Appeal from Auditors' Report of Tremont Township, filed to no. 266, September term, 1935. The surcharge made in that case resulted from purchases of gasoline and dynamite made from one of the respondents. These surcharges have been paid. We stated in the opinion rendered in that case that "Such action may not be excused on the ground that the price was fair and reasonable, [and] that no loss resulted to the school district . . .".

Here, however, we are not requested to surcharge the directors but to remove them from their elective offices. We feel that the intention and motives of respondents are important factors to be considered by us. There was no evidence in that case (which has been made part of the record of this case) that there existed any conspiracy or agreement among respondent directors to have the purchases made from one of their number. Nor is there any evidence that any of them profited thereby. While these facts are not relevent where a surcharge is requested, yet they are most relevant in the present proceeding. They weigh heavily in respondents' behalf.

Further allegations deal with the incompetence of the secretary of the school board, one of the respondents, and his failure to perform his duties. The evidence shows that while most of the secretary's duties were actually performed by the supervising principal of the school district, the secretary acted in all matters in a supervisory capacity. Although the mechanical preparation of re-

ports and orders was performed by the supervising principal, much of the actual work was done by the secretary. In the matter of recording the minutes of each meeting, for example, the evidence shows that the secretary made notes of all proceedings while the supervising principal transcribed the notes on the minute book. We cannot say in this proceeding that the secretary was so remiss in his duties so as to warrant the removal of all of the directors for that reason. We do recommend that more efficient secretaries be employed in the future. Their duties should not be delegated.

Respondents have been guilty of numerous violations of mandatory provisions of the School Code. We are not excusing their action nor are we condoning it. That the affairs of the taxpayers are not administered strictly in accordance with the mandates of the law enacted in their behalf is most regrettable. We condemn loose practices, evidence of which abounds in the record of this case. But, as we have already stated in this opinion, respondents have been guilty of no fraudulent conduct nor of any untoward motives. Nor have the taxpayers of their district suffered in any material way from their shortcomings. We hold, for these reasons, that we are not justified in utilizing the drastic power placed in our hands by the legislature. . . .

*Order and decree nisi*

And now, December 2, 1938, after hearing, it is ordered and decreed, nisi, as follows:

1. The rule to show cause why G. E. Workman, Leo Foy, Francis Culbert, John Kelleher, and George B. Dohner, respondents, should not be removed from office is dismissed.

2. Respondents shall pay the costs of this proceeding.

3. The prothonotary of this court shall give immediate notice of this order and decree to the parties or their counsel, and they are allowed 10 days from the date hereof in which to file exceptions.