Baldwin Township's Appeal.

102

Argued May 2, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Irwin I. Tryon,* for appellant.

*Joseph Schutzman,* with him *Leonard H. Marks,* for appellees.

OPINION BY CUNNINGHAM, J., October 7, 1940:

The Township of Baldwin, a township of the first class, has appealed from an order of the Quarter Sessions of Allegheny County making absolute a rule upon it to show cause why certain proceedings in that court to lay out and open a road, running in a general northeasterly direction from Shieck Street to Walton Road and to be known as Ruthwood Avenue, should not be deemed to be void and of no effect. By its order, the court below further decreed that the "land proposed to

be taken shall revert to the owners [thereof] free of any easement of [or?] right of the public to use the same."

The rule was granted upon the petition of George G. Bray and his wife, Emma, owners by the entireties of certain land proposed to be taken.

In accordance with our Rule No. 56 the parties have agreed upon a statement of the facts [1] out of which the question of law here involved arose.

It cannot be questioned that upon the confirmation by the quarter sessions on October 7, 1931, of the action of the township officials they were clothed with full authority to proceed with the physical opening and construction of the road. The ground upon which the appellees sought to have the "proceedings" decreed to be "void and of no effect" was that from the date of the confirmation up to the time of the filing of their petition on

---

[1]    "Agreed Statement of Facts.

"1.    Baldwin Township is a first class township located in the County of Allegheny and State of Pennsylvania, and existing under the provisions of the Act of June 24, 1931, P. L. 1206, its supplements and amendments.   [53 PS Sec. 19092-2013]

"2.    George G. Bray and Emma Bray, his wife, are residents of Baldwin Township.

"3.    That a group of land owners, among whom were George G. Bray and Emma Bray, his wife, petitioned the Commissioners of Baldwin Township to lay out a street to be called Ruthwood Avenue; that a public hearing was held on July 1, 1931 on said Petition and the Commissioners of Baldwin Township passed an ordinance on August 5, 1931 to lay out and open Ruthwood Avenue in said Township.  Said proceedings were duly confirmed and filed of record at the above number and term on October 7, 1931.

"4.    That the proceedings at the above number and term contain a true and correct plan of the proposed street to be called Ruthwood Avenue.

"5.    That Albert E. Wallisch et ux. have a one car garage fronting on Ruthwood Street as laid out in said proceedings, said garage being located at the southwesterly end of said Ruthwood Avenue.

"6.    That more than five years have passed since the report of

104

March 22, 1939—a period of approximately seven and a half years—no definite steps toward the physical opening and construction of the road had been taken, nor had any appropriation of township funds been made for that purpose. They invoke the provisions of Section 2013 of Art. XX of the Act of June 24, 1931, P. L. 1206, 53 PS Sec. 19092-2013. It reads:

". . . . . . Whenever *proceedings* have been heretofore or may hereafter be begun for the opening and laying out of any public road in any township, such public road shall be *physically opened upon the ground for use by the public within the period of five years next after the completion of such proceedings,* and if not so opened, then such proceedings shall be deemed to be void and of no effect, and the land proposed to be taken shall revert

---

the Commissioners of the Township of Baldwin has been confirmed; that no appropriation of township funds has been made for physically opening Ruthwood Avenue; that said proposed road is not passable; that no action has been taken to open said proposed road physically except that about eight or nine feet of the said proposed Ruthwood Avenue has been covered with red dog so that the said Wallisches may have ingress and egress to their aforesaid garage; that Ruthwood Avenue is now and always has been covered with grass and other growth, which, however, is passable in an easterly direction from Shieck Street for a distance of about eighty feet, where a barbed wire fence crosses said proposed street; that sheds and other buildings cover parts of the proposed street as is shown on the plan.

"7. Viewers were appointed to assess damages at No. 3431 January Term, 1932 in the Court of Common Pleas of Allegheny County arising out of the opening, laying out and continuing of Ruthwood Avenue. Various appeals were taken from the report of the Viewers and the appeals at No. 330 July Term, 1932, No. 331 July Term 1932, No. 338 July Term, 1932 and No. 339 July Term, 1932 in the Court of Common Pleas of Allegheny County are still pending and undisposed of.

"8. That said proceedings were filed in the Court of Quarter Sessions of the Peace and in the Court of Common Pleas in conformity with the 'First Class Township Code' of June 24, 1931, P. L. 1206, its supplements and amendments."

to the owners of the land, as in the case of the vacation of a public road, free of any easement or right of the public to use the same." (Italics supplied)

The reply on behalf of the appellant township was that the "proceedings ..... for the opening and laying out" of the road have not yet been "completed," because viewers were appointed at No. 4341 January Term, 1932, of the Common Pleas of Allegheny County and appeals taken to Nos. 330, 331, 338 and 339 July Term, 1932, of that court are still pending and undisposed of.

The question of law with which we are concerned under this appeal is whether the legislature, in fixing, in Art. XX of the statute, five years "next after the completion" of proceedings in the quarter sessions "for the opening and laying out of any public road" as the period of time at the expiration of which "the land proposed to be taken shall revert to [its] owners" unless the road has been actually opened, intended that the period thus fixed could be indefinitely extended through the trial and disposition, in the common pleas, of appeals, taken under Art. XIX, from the reports of viewers appointed by that court to determine damages and benefits to affected property owners.

When the full scope and purpose of the "First Class Township Code" are taken into consideration, as they must be (*Lindenmuth v. Commonwealth*, 312 Pa. 350; 167 A. 787; *Lansdowne Bank and Trust Company's Case*, 323 Pa. 380, 186 A. 120; *Commonwealth of Pennsylvania v. Charles*, 114 Pa. Superior Ct. 473, 174 A. 907), we think it is clear the legislature did not so intend. The statute deals with a wide variety of subjects. Article XX is headed "Roads, Streets and Highways" and governs the laying out, opening, widening, straightening, vacating and repairing thereof. The preceding Article, XIX, is entitled "Eminent Domain; Assessment of Damages and Benefits." It is concerned primarily with the various phases of viewer proceedings as in-

dicated by Section 1901 thereof which reads: "Whenever, under provisions of this act, the right of eminent domain and/or the assessment of damages and benefits in viewer proceedings is provided for, the proceedings shall be as set forth in this article." The proceedings therein referred to are "viewer proceedings" which, whenever collaterally provided for by some other provision of the code, shall be as set forth in Article XIX. These viewer proceedings are clearly intended to be merely incidental to the accomplishment, in a constitutional manner, of the various main purposes of the statute.

There are other indications of the legislative intent to treat the opening and laying out of public roads on the one hand, and the assessing of damages or benefits arising therefrom, on the other, as separate and distinct proceedings.

The respective proceedings are in different courts. Article XX, after conferring upon the township commissioners the power to lay out and open roads and prescribing in detail the procedure, concluding with the filing of their report in the office of the clerk of the court of *quarter sessions,* subject to exceptions thereto, then provides that "if the compensation for the damages or benefits accruing therefrom have not been agreed upon, the court of *common pleas,* or any law judge thereof in vacation, on application by petition by the board of commissioners or any person interested, shall appoint three viewers, from the county board of viewers, to assess the damages and benefits occasioned by the proceeding [to lay out and open the road] in the manner provided by this act for such proceedings"; i. e. as provided for in Art. XIX.

The limit of the jurisdiction of the quarter sessions is reached when the report of the commissioners is confirmed, either automatically when no exceptions have been filed or when any exceptions taken have been dis-

missed. Clearly, one of the main purposes of Article XX is the opening of new public roads. If the damages and benefits to abutting property owners have been agreed upon, the confirmation by the quarter sessions is the end of the whole matter; but if not agreed upon, the incidental and exclusive jurisdiction of the common pleas to appoint viewers and adjudicate all such controversies attaches as soon as the quarter sessions has confirmed the report in all other particulars. In no event has the quarter sessions any further jurisdiction.

Another indication of the legislature's intent is its use of the word "such" in the section here in controversy. We adopt this excerpt from the opinion of the court below written by McNaugher, J:

"It is, we think, significant that the word 'such' is used with the word 'proceedings'. The reference, apparently, is to the proceedings 'begun for the opening and laying out of any public road'. This action was one instituted in the quarter sessions court and it was completed there. The proceedings in the common pleas court, while incident to the other, did not affect the opening and laying out of the road, but related solely to the fixing and allowance of damages arising therefrom."

Furthermore, the first sentence of the section provides: "Public roads or highways laid out by lawful authority in townships shall, *as soon as may be practicable*, be effectually opened and constantly kept in repair." (Italics supplied)

We cannot conceive that the legislature, after thus definitely declaring its intention that roads, once laid out, should be opened "as soon as may be practicable" and then fixing as the maximum period of delay "five years next after the completion of [the] proceedings" for opening roads, intended the word "proceedings" to include those incidental controversies, in a different forum, which frequently arise over damages and benefits—controversies which, with their possible attendant

appeals, might consume an indeterminate number of years.

The case of *Fornance v. Montgomery County*, 311 Pa. 18, 166 A. 231, cited and relied upon by counsel for appellant, is not applicable to the issue here involved.

That case arose under the Act of May 7, 1929, P. L. 1596, 36 PS §§373-375, so broadening the scope of the Sproul Act of May 31, 1911, P. L. 468, 36 PS § 1 et seq., as to include therein those portions of the state highway system which are within the limits of boroughs. By amendments to the Sproul Act the burden of paying damages was transferred from the state to the counties and the county commissioners were given the right to appeal from the award of viewers to the common pleas.

Section 3 of the Act of 1929, 36 PS §375, conferred upon owners of property, affected by any construction work proposed by the Secretary of Highways, the right to petition the court of quarter sessions for the appointment of viewers if the damages could not be agreed upon between the county commissioners and the land owners. It then provided: "The proceedings upon said petition and by viewers shall be governed by existing laws relating to the ascertainment and assessment of damages for opening public highways, and such damages, when ascertained, shall be paid by the county in which the State highway is located."

In sustaining the right of the commissioners of Montgomery County to appeal from the award of the viewers, the Supreme Court held that the "existing law" referred to was the Sproul Act and that "the proceedings upon said petition and by viewers," which were to be governed thereby, included an appeal to the common pleas. The case is clearly distinguishable from the one at bar. Under the Act of 1929, the viewers are appointed by the quarter sessions; the proceedings in the common pleas are purely of an appellate nature and therefore a

component part of those originating in the quarter sessions.

We are all of opinion that this case was properly disposed of in the court below.

Order affirmed at costs of appellant.