## Lancaster Trust Company Case.

Argued May 22, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Paul A. Mueller,* for liquidating trustees, and depositors, appellants.

*G. T. Hambright,* for Lancaster City School District, appellee.

OPINION BY MR. JUSTICE LINN, June 29, 1945:

This appeal is from an order distributing assets of a closed bank remaining after a number of prior distributions from 1933 to 1943. The appellants were depositors in Lancaster Trust Company when the Secretary of Banking took possession; the appellee is the School District of the City of Lancaster, which had designated the bank as its depository. In distributions prior to that now before the court, both appellants and appellee shared at the same rate. The question now [1] is whether, on a theory of liability not heretofore proposed by the school district, it may exclude the other depositors and receive the entire balance for distribution.

The Secretary took possession on January 12, 1932. The bank's books then showed deposits of $367,581.07 to the credit of the school district and that the bank had cash in excess of that amount.

On March 1, 1933, the Secretary filed his first and partial account and allowed the school district's claim as a common creditor. To that account, the school district excepted. On July 25, 1933, the court dismissed

---

[1] Counsel for appellants states it as follows "(d) The issue in this case is not whether the Appellee or a solvent bank (its stockholders) shall bear a loss. The issue in this case is whether or not depositors of a closed bank, entirely and completely innocent and without any knowledge of, or ability to control, the events involved, shall be made to bear a loss incurred by the Appellee because of its own error in judgment."

the exception, and in the course of the opinion filed in the case on July 25, 1933, the late Judge ATLEE said: "The basis of the claim for priority is briefly as follows: The claimant is a school district of the second class, under the laws of the Commonwealth of Pennsylvania; that, as such, it is a municipal corporation—an agent of the state; that the Commonwealth of Pennsylvania has priority status in regard to moneys due to the Commonwealth and deposited in all banking institutions under the control of the Commonwealth; and therefore, the claimant, as an agent of the Commonwealth, is entitled to the same priority status as is allowed to the Commonwealth of Pennsylvania . . ." He held that the school district could not assert the Commonwealth's right and dismissed the claim on the authority of *Valley Deposit and Trust Company of Belle Vernon*, 311 Pa. 495, 167 A. 42. On August 30, 1933, the school district excepted to that conclusion. The school district, which was the moving party, allowed that exception to remain undisposed of until in 1943, when it became the basis of the action now under review.

In the meantime, the Secretary of Banking filed six accounts during the course of his administration, all of which were duly confirmed. He was discharged January 16, 1943. In addition to his administration, liquidating [2] trustees of certain assets also administered. They filed seven accounts which were confirmed. Pursuant to those confirmations, distributions were made from time to time and in each instance the school district shared with the other depositors as a common creditor.[3] In the brief of the school district, its counsel very properly said: "We concede that the confirmation of the various partial accounts, both of the Receiver [Secretary] and of the Liquidating Trustees, were conclusive as to the

---

[2] Pursuant to Sec. 28, Act of June 15, 1923, P. L. 809, as amended.

[3] As we understand the briefs, the school district has received 72½% of its claim, leaving an uncollected balance of $94,111.36.

funds there distributed . . ." See *Harr v. Lower Chichester Twp.,* 337 Pa. 395, 399, 11 A. 2d 155.

The liquidating trustees, on September 10, 1943, filed their 8th and partial account, which is now before the court, showing a balance of $98,963.31 for distribution among all the depositors. The school district excepted to the proposed schedule of distribution and, on October 22, 1943, in support of the exception, presented its petition for a rule to show cause why its claim should not now be treated as a claim originally entitled to priority and therefore to be paid in full. A rule was granted; the liquidating trustees answered; testimony was taken and a decree of priority of payment was made on the school district's theory that, in receiving the school funds, the trust company became a trustee ex maleficio. These appeals are from that decree.

In its petition of October, 1943, the school district alleged that the trust company ". . . was a duly designated depository for funds of the School District of Lancaster, Pa., for the year beginning the first Monday of July, 1931, and ending the first Monday in July, 1932;" that the trust company furnished its bond of $50,000 with surety. "4. That said bond was not a proper bond as required under Section 509 of the School Code, in that the amount thereof was not sufficient to protect the School District against loss, and in that said bond made the School District a Co-Surety for any moneys on deposit in excess of said sum of Fifty Thousand Dollars ($50,000.00).

"5. That by failure of the Lancaster Trust Company to furnish a proper bond, as required by Section 509 of the School Code, it became a Trustee ex maleficio as to any funds of the School District received by it."

By those averments the school district accused the school directors who participated in providing for the deposit of the school funds of unlawful conduct which resulted in the alleged trust ex maleficio. Respondents, in their answer, denied the school district's right to make

the claim ". . . when the only effect of such a position is to adversely affect the rights of all other creditors and depositors. . . ."

The bond is obviously not what is required by the School Code. We are not informed of the amount of the deposits on July 7, 1931, when the bond became effective for the year in which the default occurred, but the bond shows that the parties contemplated deposits in excess of the penal sum of $50,000; they made no provision for securing such funds. It provides: "Third. If at the time of default under this bond the amount on deposit with the Principal to the credit of the Obligee shall exceed the amount of this bond, and the Obligee shall not hold additional security equal to the amount of such excess deposits, the Surety shall be liable hereunder for only such proportion of the penalty of this bond as the penalty of this bond shall bear to the total amount on deposit to the credit of the Obligee, and the Surety shall be subrogated in the same proportion to all the rights of the Obligee against any person or corporation as respects said default and the Obligee shall execute all papers required, including a receiver's certificate for the amount of the Surety's payment, and shall co-operate with the Surety to secure to the Surety all such rights.

"Fourth. The Surety shall not be liable hereunder for a greater proportion of the total loss sustained by the Obligee for any failure of the Principal than the penalty of this bond bears to the total amount of bonds or other security furnished by the Principal in favor of the Obligee." [4]

It does not appear that the school district had (to quote from the bond) "additional security equal to the amount of such excess deposits, . . ." but it is clear that

---

[4] The School District settled with the surety for $17,500 and assigned to it $17,500 of "the amount standing to the credit of the" School District.

the school district's funds were not adequately secured.

Many cases [5] illustrate the general rule that school directors must act in strict accord with the code. Section 509 of Article V of the Act of May 18, 1911, P. L. 309, provides: "The board of school directors in any school district in this Commonwealth may designate one or more banks or trust companies as a depository or depositories for its school funds. No such depository shall be named unless it receives a majority of the votes of the entire school board elected or appointed in such district, and such depository before receiving any of the school funds shall furnish a proper bond, in such amount and with such surety or sureties, as may be required, to be approved by the board of school directors, and conditioned upon the faithful keeping, paying out, and accounting for of all the school funds and property of said school district that may come into its hands, as well as for the payment of all interest on money deposited in such depository in accordance with any contract made by it with said school district. The funds of the school district shall be deposited, as directed by the board of school directors, in such depository, by the school treasurer, in the name of the school district; and after any funds have been deposited with such regularly designated depository by any school treasurer, he shall thereafter be relieved from all liability therefor, and all

[5]Among them, *Lansdowne Bank & Trust Company's Case*, 323 Pa. 380, 186 A. 120; *Chester School District's Audit*, 301 Pa. 203, 151 A. 801; *Appeal of Sykesville Borough*, 91 Pa. Superior Ct. 335; *Snyder v. Washington Township School District*, 117 Pa. Superior Ct. 448, 178 A. 312; *Jenkins Township School Directors' Removal Case*, 344 Pa. 267, 25 A. 2d 158; *McCandless v. Summit Twp. School District*, 55 Pa. Superior Ct. 277, 280; *Hawkins' Petition*, 129 Pa. Superior Ct. 453, 195 A. 761; *Potts v. Penn Twp. School Dist.*, 127 Pa. Superior Ct. 173, 193 A. 290; *Parnell v. School Bd. of Clymer Bor.*, 99 Pa. Superior Ct. 281; *Costolo v. School District of Springhill Twp.*, 99 Pa. Superior Ct. 259; *Com. ex rel. Ake v. Blough*, 330 Pa. 590, 200 A. 10; *Ickes v. Costlow*, 127 Pa. Superior Ct. 180, 193 A. 297; *Carns v. Matthews*, 114 Pa. Superior Ct. 528, 174 A. 840.

school orders, drawn on the school treasurer for any funds so deposited by him, shall be endorsed by said treasurer and made 'Payable at . . . depository of the School District of . . .': Provided, That no school district in this Commonwealth shall deposit with any designated depository any amount in excess of thirty-three and one-third per centum of the total capital stock and surplus of such depository." [6]

The requirement of adequate security is mandatory: *Lansdowne Bank & Trust Company's Case*, 323 Pa. 380, 186 A. 120. The failure of the school directors to take adequate security, was a breach of statutory duty rendering them liable for loss, not only to the school district, but to others sustaining damage legally resulting from their unlawful conduct. If they had done their duty, the school district would not have sustained any loss and the assets for distribution to depositors could not have been diminished by a claim for a fund held on constructive trust. It is unnecessary, for the purposes of this case, to consider whether the trust res is the entire deposit or only the excess over the amount secured by the bond, an amount in itself not free from dispute.

We cannot understand the school district's acceptance of dividends on the distributions made prior to the account now before the court, except on the theory that the school directors thought they had originally taken adequate security as required by the code and, in depositing the school funds, had become a creditor of the bank and not the beneficiary of a trust. It is quite obvious, if one may judge by what he said, that the late Judge ATLEE so understood their claim.

In auditing accounts of banks in liquidation, the court applies equitable principles. The appellant depositors contend that the school district waited too long to assert the new basis of recovery. Whether laches ap-

---

[6] This provision was supplemented by the Act of June 1, 1933, P. L. 1152, section 6, 24 PS section 461.

pears depends on whether the school district's conduct resulted in such a change in the depositors' position as to have disabled them from obtaining redress from the directors for the unlawful acts. The learned court, from whose order the appeal comes, thought there was no laches ". . . in view of the fact that the parties [appellant depositors] against whom the claim is presented will suffer no more of an injury than if the claim had been successfully concluded at the time of the filing of the exceptions" in 1933. We think this is an erroneous view. The appellant depositors, as between themselves and the bank, had the right to assume that the bank had complied with the law regulating the receipt of deposits; they had no knowledge of the school directors' unlawful acts nor of the trust company's wrong in receiving the school funds in the circumstances stated in the school district's petition. The present dispute is not between the school district and the trust company. The trust company has become insolvent. Three parties are now directly concerned: (1) the school district; (2) the school directors who are now accused by the school district of having unlawfully deposited its money; (3) depositors entitled to distribution. The depositors say it is inequitable to permit the school district to enforce the trust unless the directors, whose unlawful acts created the trouble, are required to restore for distribution to the depositors, an amount equal to the amount claimed by the school district. The Secretary of Banking and the liquidating trustees succeeded to the assets for the purposes of administering them. The status of the parties was fixed as of the date on which the Secretary took possession. The assets then passed into the custody of the law. They included an amount which had been placed in the bank by the unlawful conduct of the school directors acting for the school district. The school district had two sources of recovery: (1) by requiring the directors to repay the amount unlawfully diverted, and (2) by an equitable application to charge with a con-

structive trust the traceable assets in the hands of the Secretary. The depositors had only one source of payment. If, therefore, the school district had made timely application on the ground for the first time set forth in the petition of 1943, the court, in granting the petition, could have subrogated the depositors to the school district's right against the directors. If the averments in the petition are true, the school directors were liable to surcharge by the auditors required to audit the school finances as directed in sections 2601 and 2616 of the School Code: compare *Hanover Township School District's Audit*, 265 Pa. 157, 164, 108 A. 656; *Chester School District Audit*, 301 Pa. 203, 214, 151 A. 801; *Appeal of Sykesville Borough*, 91 Pa. Superior Ct. 335; *Lower Nazareth Township Supervisors' Appeal*, 341 Pa. 171, 19 A. 2d 92; *Likovich Appeal*, 347 Pa. 40, 31 A. 2d 543. It does not appear that they were surcharged, or that the school district took any steps to collect from them. The effect of the school district's failure to enforce the personal liability of the directors and the legal effect of the lapse of time since that liability arose, must be borne by the school district; the legal consequences of its inactivity may not equitably be shifted to the other depositors. The defense of laches, therefore, clearly appears and may be asserted: cf. *Pitts. Rwys. Co. v. Carrick*, 259 Pa. 333, 103 A. 106; *Com. ex rel. Margiotti v. Union Traction Co.*, 327 Pa. 497, 194 A. 661. Having reached this conclusion, it is unnecessary to discuss other questions suggested in argument.

The appeal of the liquidating trustees is dismissed but in each of the other appeals, the order making the rule absolute is reversed and the rule is discharged, costs to be paid out of the fund.