# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

---

## Commonwealth, ex rel, *v.* Hudson, Appellant.

*Justices of the peace—Boroughs—Dissolution—Effect on justice's commission.*

The commission of a justice of the peace expires with the dissolution of the borough for which he was commissioned, and where it appears that after such dissolution of the borough the justice claimed to exercise the functions of a justice of the peace, he is properly ousted from such office in quo warranto proceedings.

Argued Feb. 8, 1916. Appeal, No. 300, Jan. T., 1916, by defendant, from judgment of C. P. Chester Co., Aug. T., 1915, No. 1, in quo warranto proceedings, in case of Commonwealth of Pennsylvania, ex rel Francis Shunk Brown, Attorney General, v. Thompson Hudson. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Quo warranto to oust defendant from the office of justice of the peace in the Borough of Hopewell.

The facts appear in the following opinion by BUTLER, P. J.:

Thompson Hudson having been elected at the general election of 1913 a justice of the peace for the Borough of Hopewell in this county, was duly commissioned a justice of the peace in and for this borough for the term of

six years from the first Monday in January, 1914. As the result of proceedings regularly instituted and conducted the Quarter Sessions Court of this county on January 26, 1914, made a decree annulling the charter of the Borough of Hopewell and directing that its territory should return to the Townships of East Nottingham and Lower Oxford whence it had come.

The question presented is whether the respondent's commission survived the dissolution of the Borough of Hopewell for which he was commissioned. His commission made him a justice of the peace for the Borough of Hopewell; that was his district, after it vanished could his commission continue to exist? That it could not we think is plain under the authority of Respublica v. McClean, 4 Yeates 399. There, McClean having been commissioned to be a justice of the peace in the Townships of Hamiltons Bann in York County, his township was made a part of Adams County, and it was held that though his district or township, Hamiltons Bann, remained intact, it being now part of Adams County, did not answer the description of his commission which was for Hamiltons Bann, York County, and therefore his office was at an end. In one case the justice and his district have not been moved into another county, but worse than that, his district itself is annihilated, the place in Chester County for which he was commissioned no longer has any existence anywhere, what was once the Borough of Hopewell has been poured back into the two townships whence it was taken, and has become again undistinguishable parts thereof. Certainly if to move a justice and his district into another county and thus deprive him of his jurisdiction, as was done in the case cited, is fatal to his commission; then surely to strike him where he lives, to destroy the very place of and for which he is a justice, must terminate his commission. The Act of February 22, 1802, 3 Sm. L. 490, provides "No justice of the peace shall act as such unless he shall reside within the limits of the district for which he was

commissioned." The Act of June 21, 1839, P. L. 376, Sec. 13, provides "That during their continuance in office justices of the peace shall respectively keep their offices in the ward, borough or township for which they have been elected." And from within his district he must issue all process, carefully note thereon the location of his office in his district where such process is returnable; and after he has thus acquired jurisdiction it is at least irregular for him to conduct the hearings out of his district. Obviously the death, the destruction of the district for and on account of which a justice has been created, is fatal to his official existence. That this is true is recognized in Commonwealth v. Gamble, 62 Pa. 343, 350, the court saying, "I see not for another reason that the commission of a president judge could exist after the total abolition of his district. Every judge is elected in and for a district defined and fixed by law, and then he is commissioned, and is required by the Constitution to reside within the district. It seems to me it would be a logical conclusion to hold that if no district exists to which the commission could apply and in which the judge could reside, that there could not exist a commission for any purpose."

In the case just quoted from it is decided that an act of assembly which provided for making the county presided over by Judge GAMBLE part of another judicial district, thus depriving the county of its independence as a judicial district, and Judge GAMBLE of his office, was unconstitutional, but this case recognizes and sustains the decision in Respublica v. McClean, 4 Yeates 399, and in commenting on that case fully supports the doctrine that change in the political division of the State must be made as the public good requires them, even though these changes incidentally may inevitably result in terminating the commission of justices of the peace. "It would greatly retard the improvement of the State if new counties could not have been formed out of the territory of the large counties......because of the existing

4 COM., ex rel., v. HUDSON, Appellant.

commissions of the magistrates in the old counties. On the other hand it was not easy to hold the commission continued in force in a county for which it was not issued." It would be less "easy to hold that the commission continued in force" where, as in our case, the borough for which the respondent was commissioned a justice of the peace, is but a memory. As the facts appearing in Respublica v. McClean, supra, indicated that the changes in the political divisions there involved were for the public welfare and only incidental and as an unavoidable consequence, ousted the justice so in our case the grand jury which heard the parties and recommended the annulment of the charter of Hopewell Borough, and its resolution into its parent townships, presumably acted as the public interest required. In this connection we may again quote from Respublica v. McClean, supra, "But it has been strongly urged by the counsel for McClean that the legislature having no right to annul by a direct act the commissions of officers who hold during good behavior, cannot do it indirectly, and that the most pernicious consequences may flow from the exercise of this power for party purposes. In answer to this, it may be said, that if the legislature was to make a division of a county for no other purpose than barely to deprive justices of the peace of their commissions, it would be a case very different from that which comes before the court, and concerning which it would be improvident to deliver an unnecessary opinion. It is not pretended that the County of York was divided for any such purpose. The question is whether from an act of the legislature within their acknowledged powers, the destruction of McClean's commission does not necessarily follow. I will add that the possible abuse of any given power, is no argument against the right to exercise it."

We have sought to give full consideration and force to the thorough and able presentation of the respondent's case, and due weight to all the assurance by which his

term is protected, but cannot for the reasons stated avoid the conclusion that when, through regular proceedings under valid laws and because the public interest required the obliteration of this political division, the charter of Hopewell Borough, the sole district for which he was commissioned, was annulled, the respondent's office terminated.

The court directed that judgment of ouster be entered against the defendant.   Defendant appealed.

*Error assigned* was the judgment of the court.

*John R. Scholl* and *Benj. F. Davis,* for appellant.

*H. L. Sproat* and *S. D. Ramsey,* for appellees.

PER CURIAM, March 13, 1916:
The judgment is affirmed on the opinion of the learned court below.