## In re Landisburg Borough Charter

*H. B. Crytzer*, for petitioner.

RICE, P. J., April 4, 1942—On July 1, 1941, the petition of 149 taxable inhabitants of the Borough of Landisburg, Perry County, was presented to the court, setting forth, inter alia, their desire that "the territory presently embraced within the Borough of Landisburg shall revert to and become part of Tyrone

Township, from which township said territory was taken," and praying the court to make an order annulling the charter of the said borough, whereupon the court fixed September 9, 1941, for a hearing and directed that notice be given as prescribed in section 302 of The General Borough Act of May 4, 1927, P. L. 519, as amended by the Act of June 9, 1931, P. L. 386. Due proof has been filed that notice was published as required and that written notice was also given to the supervisors of Tyrone Township, the school directors of the school districts of Landisburg Borough, Tyrone Township, and Spring Township, the town council of Landisburg Borough, and the county commissioners of Perry County. On the day fixed for the hearing certain persons appeared on behalf of the application and certain testimony was produced, but no objections or exceptions against the application were filed and no one appeared at the hearing in opposition to the application.

The town of Landisburg was incorporated directly by the Act of December 23, 1831, P. L. 3, entitled "An Act to incorporate the town of Landisburg, in the County of Perry, into a borough, and to appoint trustees for the public school house therein." By proceedings in this court, entered to no. 12, August session, 1915, and recorded in the office of the recorder of deeds of the county, held in pursuance of the provisions of The General Borough Act of May 14, 1915, P. L. 312, by decree dated October 5, 1915, the name of the Borough of Landisburg was changed to "The Borough of Landisburg," and it accepted, and became subject to, the provisions of the said act and surrendered the provisions of the said Act of 1831 so far as they were inconsistent with those of The General Borough Act.

The petition further avers: "3. That the taxable inhabitants of Landisburg Borough are placed under undue expense because their number is small and the necessity of maintaining a separate school board, school

system, borough council, election board and other offices adds an onerous burden upon them.

"4. That the general welfare of both Landisburg Borough and Tyrone Township will be benefited by the annulment of said charter of Landisburg Borough."

It may be observed at this point that the expense of holding elections in the Borough of Landisburg is payable by the County of Perry.

The instant proceedings are had under the provisions of sections 301, 302, and 303 of The General Borough Act of 1927, as amended. Section 301 provides:

"The several courts of quarter sessions within this Commonwealth shall have power, upon petition of two-thirds of the taxable inhabitants of any borough heretofore incorporated, to decree the annulment of the charter of such borough. The petition for the annulment shall set forth that the petitioners desire that the territory embraced within such borough shall revert to and become a part of the township from which it was taken." Section 302 provides:

". . . and at such hearing the court shall make a full investigation of the case and, if it shall find that the conditions prescribed by law have been complied with and shall believe that it is expedient to grant the prayer of the applicants, shall grant the same and make a decree accordingly. . . ." Section 303 provides:

"Upon the entry and recording of such decree, the lands embraced within the limits of such borough, whose charter is annulled, shall thereupon revert to and become a part of the township from which it was taken, and be under and subject to its government and control."

We are of the opinion that we should take cognizance of every fact, circumstance, and condition that may have any bearing, favorable or unfavorable, upon the expediency of decreeing an annulment of the borough charter. Webster's New International Dictionary (2nd ed., 1941) defines the word "expedient", an

adjective, as "apt and suitable to the end in view; practical and efficient; characterized by mere utility rather than principle; conducive to special advantage rather than what is universally right." See also the opinion of Judge Sayres in In re Borough Charter Annulment, 82 Pitts. 111. If the main purpose of the applicants is to have the school district coterminous with the borough abolished and that purpose cannot be accomplished as a consequence of a decree of annulment, or if there be grave doubt whether a decree of annulment would result in the abolition of the school district, then it may be said that a decree of annulment would not be expedient. However, we feel that the word "expedient" as used in The General Borough Act has a larger meaning than mere fitness or suitability or efficiency to accomplish the purpose for which this proceeding is initiated and that the intention of the said act is that the consequence of an annulment decree must be beneficial rather than harmful, and that the general welfare, not only of the inhabitants of the territory of the borough, but also those of the township to which such territory would revert, should be promoted by the proposed annulment decree. In this sense it is the expediency of the probable consequences of an annulment decree, not the expediency of the statutory proceeding alone, that should be considered. A decree of annulment is not a matter of absolute right but is largely within the discretion of the court, when the court has been enlightened by knowledge of all the attendant facts and circumstances. We are of the opinion, therefore, that we should take cognizance of every fact, circumstance, and condition affecting the questions involved, whether the same be shown by the testimony or otherwise come to the knowledge of the court. The effects of a decree of annulment would be continuous and far-reaching and will be felt by succeeding generations, and no such decree should be made without a proper consideration of all present and future, certain and possible, consequences of such a decree.

If a decree of annulment is entered, to paraphrase the language of the Superior Court in Ortlip v. Shivery, 66 Pa. Superior Ct. 334, 337, the borough charter will be declared to have no legal existence, the borough as a corporate entity will cease to exist, the whole fabric of the municipality will fall, and the decree will be notice to the world that there is no Landisburg Borough. And the territory within the borough boundary lines will revert to the Township of Tyrone, which surrounds it on all sides, and become subject to the laws regulating second-class townships. All the officers of the borough, such as burgess, councilmen, high constable, assessor, tax collector, and auditors, and all the officers who are not borough officers but are elected for the territory embraced within the borough limits, such as constable and justice of the peace, will cease, from the date of the decree of annulment, to be public officers and to have any authority as such: Commonwealth ex rel. v. Hudson, 253 Pa. 1; Ortlip v. Shivery, supra. Also, one of the effects of a decree of annulment will be the abolition of the election district of the borough, since the electors of the borough election district would automatically become residents of the township election district. The annulment of the borough charter will deprive the people of the borough of their powers under The General Borough Act to improve and regulate their streets and alleys, to provide illumination for their streets, to establish a water or sewer system, and to make regulations for their health and well-being, and all the existing ordinances of the borough will be abrogated. When a large number of people live within a comparatively small territory, as in a village or town divided up into small lots of ground, it is more essential that they have certain rights of local self-government for their convenience, health, safety, fire protection, and other benefits. Hence it is recognized that it is worth while to have a borough

government for a village or town even though it means that it will cost the people more than a government under township laws, and the mere fact that there may be such expense is not a sufficient reason for the annulment of a borough charter.

According to the report of the borough auditors for the year 1941, the total amount of taxable property in the borough was $100,735, on a basis of 90 percent of its true value, the tax rate was six mills, the borough had no liabilities, and the balance in the treasury on January 1, 1942, was $123.31, as compared with $71.18 on January 1, 1941, and the outstanding taxes amounted to $80.20. This report also shows that the proposed tax rate for the year 1942 will be four mills. We are not convinced that these statistics alone would justify the annulment of the borough charter.

However, it is contended that the school taxes of the inhabitants of the borough are very burdensome, and the real reason for the application is to abolish the school district if that would necessarily result from the borough charter annulment. The school district has two grade teachers and is a member, together with Tyrone Township and Spring Township, of a joint high school district. Under the conditions heretofore existing, the Landisburg school district has been paying about one third of the cost of maintenance of this high school. Because the population and assessed valuation of property of the Landisburg school district are small as compared with the said townships, the school taxes of the Landisburg district are much higher than those of the two townships. We are informed by the county superintendent of schools that a new arrangement has been made whereby the expenses of the high school will be based on the total assessed valuations of property in the three districts, which will reduce very materially the school taxes in the Landisburg district. Under these circumstances we feel that the annulment of the borough charter, if it would result in the abolition of the school district, would not be expedient.

However, after a consideration of the provisions of the School Code, we are not convinced that the annulment of the borough charter would abolish the school district by operation of law. Section 101 of the School Code of May 18, 1911, P. L. 309, as amended by the Act of April 24, 1929, P. L. 642, provides in part:

"Each city, incorporated town, borough, or township in this Commonwealth, now existing or hereafter created, shall constitute a separate school district . . ."

This is almost a verbatim reënactment of previous statutory provisions and has been construed by the courts to bring about automatically, without any act of any court, tribunal, or agency of the Commonwealth, the creation of a new school district coterminous with a new city, borough, or township created under city, borough, or township laws, with the condition, in certain cases, that the new school district be approved by the State Council of Education. It is contended that this statutory provision must be construed to work the abolition of a school district coterminous with a city, incorporated town, borough, or township whose charter may be annulled. This statutory provision expressly and directly refers to newly-created cities, incorporated towns, boroughs, and townships, but it does not expressly or directly refer to any such municipality whose charter has been annulled. If this section had been drawn so as to read substantially as follows: "Each city, incorporated town, borough or township, now existing, or as it may hereafter exist, or hereafter created," the words "as it may hereafter exist" might plausibly be construed to apply to a township to which territory comprising a borough whose charter had been annulled had reverted. But the School Code must be strictly construed: Lansdowne Bank & Trust Company's Case, 323 Pa. 380; and a strict construction of this section will not permit to be read into the statute language essential to the desired construction, but not found in the statute. A consideration of subsequent

sections of the code will serve to aid in the construction of the words "now existing" in section 101. Section 109 of the code, as amended by the Act of May 28, 1915, P. L. 627, provides in part:

"If any new school district is made by the creation of any city, borough, township, or independent school district, or by the annexation of territory comprising a separate school district to a city or borough or township, or if the boundary lines of any school district are changed, by reason of the changing of the boundary lines of any city, incorporated town, borough, township, or independent school district, then, in any such case, the change so far as it relates to school districts or school affairs, shall take effect at the beginning of the first school year after such new city, borough, township, or independent school district has been created, or such annexation affected [effected], or such change in boundary lines permanently effected."

In the first conditional clause of this sentence introduced by the word "if", we have two phrases beginning with the preposition "by" modifying the verb "is made", and it must be held that a new school district is made by (1) the creation of a new city, borough, township, or independent school district, or (2) the annexation of territory comprising a separate school district to a city, borough, township, or independent school district. The word "annexation" means the addition of territory by means directly of some legal proceeding under city, borough, township, or school laws and does not comprehend the reversion of territory as the result of the abolition of a city, borough, township, or independent school district. This distinction between the words "annex" and "revert" is further illustrated by section 108 of the code, which provides in part:

"From and after the beginning of the first school year . . . all independent school districts as they now exist shall be abolished, and the lands comprising the

same shall revert to the school districts hereby established in which they are located . . ."

The word "revert" in this section has the same meaning as it has in section 303 of The General Borough Act under which this proceeding is brought. Thus, it is seen that a new district is not created when territory comprising a separate school district reverts to a city, borough, or township by reason of the annulment of the charter of some municipality coterminous with such separate school district. Now, when there is such a reversion, is there a change in the boundary lines of the city, borough, or township to which such reversion occurs, as the word "change" or "changing" is used in section 109 of the code where it says: ". . . if the boundary lines of any school district are changed, by reason of the changing of the boundary lines of any city, incorporated town, borough, township, or independent school district, then, in such case, such change so far as it relates to school districts or school affairs, shall take effect at the beginning of the. first school year after . . . such change in boundary lines permanently effected"?

The territory of Landisburg Borough is an island, entirely surrounded by territory of Tyrone Township, and if the borough ceases to exist its boundary lines will be obliterated and the inner boundary lines of Tyrone Township will be obliterated, leaving unchanged the outer boundary lines of Tyrone Township. The word "change" means "alter"; it cannot mean "obliterate, destroy, abrogate, abolish". If the annulment is decreed, the reversion of territory to Tyrone Township will not cause any change in its boundary lines. Hence, the situation brought about by an annulment of the borough charter does not come within the provisions of the code we have quoted or any others we know about. The School Code, in new sections added to it by later acts, provides for the formation of union districts and the merger of districts. The inclusion in the

code of all these provisions for the alteration of the school districts as they existed when the code was enacted and also for the creation of new districts furnishes a strong argument for the proposition that the code excludes from its scope any situation resulting from the abrogation of a borough charter and leaves the district coterminous with such borough as it was before such abrogation: inclusio unius est exclusio alterius. We are, therefore, of the opinion that the annulment of the charter of a borough does not abolish the school district coterminous with such borough.

This opinion is expressed by Judge Sayers in In re Borough Charter Annulment, 82 Pitts. 111, as follows (p. 120) :

"It is the opinion of this court that any decree it would make in the premises would have nothing to do with the abolition of the present school district, and if the school district is to be combined or revert to and become a part of the school district of Perry township, such a proceeding must be had in the court of common pleas, and it would be a duty of that court to provide for a reversion or combining of the school districts and to adjust the indebtedness and property rights of the two districts in such a decree."

This is the only Pennsylvania case we have been able to find in which was considered or mentioned the question of abolition of the school district of a borough whose charter is annulled. In Commonwealth ex rel. v. Hudson, supra, it is stated that the charter of Hopewell Borough, Chester County, was annulled by court decree on January 26, 1914, and according to information furnished by the Department of Public Instruction there was a Hopewell Borough School District in Chester County during the school year ending June 30, 1931, but there is no further trace of it in the department records after that date. We are not informed just how it ceased to exist and whether there was a special court proceeding for its abolition or whether its abolition

was generally assumed as a result of the borough charter annulment.

The court has no authority to make any order in this proceeding affecting the school district. Even if the court were of the opinion that a decree of annulment of the borough charter would automatically result in the abolition of the school district, such opinion would not be binding on anyone. The Department of Public Instruction, according to a letter of the Deputy Superintendent of Public Instruction, is of the opinion that an annulment decree would not abolish the school district. If the school directors of the two school districts involved take a contrary view, there is a strong probability of an impasse in the school affairs of the two districts, confusion, uncertainty and litigation, all to the great harm of the inhabitants of the two districts. It certainly would not be expedient for the court to make a decree that would result in such a situation.

So far as the borough government and its burden is concerned, there is no reason for the annulment of the borough charter. So far as such a decree would affect the school district, we believe that the school district would continue to exist as before. Hence, we conclude that the prayer of the petition should be denied.

### Decree

And now, April 4, 1942, proof having been made that notice was given as required by law, and a hearing having been held on September 9, 1941, at 9 a.m., at which the court made a full investigation of the case and received such evidence as was offered, and the court being of the opinion that the conditions prescribed by law have been complied with but that it is not expedient to grant the prayer of the applicants, the prayer of the petition is refused, the petition is dismissed, and it is ordered that all the costs and expenses incident to this proceeding be paid by petitioners.