### St. Lawrence Borough Charter

*Raymond K. Hess,* for petitioners.
*Geoffrey M. Stoudt,* for Borough of St. Lawrence.
*Elliott B. Goldstan,* for Township of Exeter.

ESHELMAN, J., August 1, 1972.—A petition signed by more than 10 percent of the registered electors of the Borough of St. Lawrence was filed with the court requesting that the charter of the borough be annulled and the territory embraced within the borough revert to the Township of Exeter, and that an election be ordered so that the electors of the borough may vote for or against such annulment of the charter and reversion to the township. The petition was filed under section 301 of The Borough Code of February 1, 1966 (No. 581), P. L. (1965) 1656, 53 PS §45301, which provides as follows:

"The court of quarter sessions shall, upon petition of at least ten percent of the registered electors of any borough setting forth that the inhabitants of such borough desire to annul the charter of the borough or to change the corporate name of such borough, order an election to be held on the next day appointed for the holding of a general, municipal or primary election, occurring at least ninety days after the presentation of such petition, at which election the electors of the borough shall vote for or against the annulment of the charter or the change of name of the borough, as the case may be. In the case of an annulment of charter, such petition shall set forth that the petitioners desire that the territory embraced within such borough shall revert to and become a part of the township from which it was taken or that it shall be created a new township of the second class, in which case the petition shall also set forth the proposed name of the new township."

Notice of the filing of said petition was given to the Borough of St. Lawrence and the Township of Exeter.

Counsel for petitioners, borough and the township stipulated, inter alia, that the borough was incorporated in 1927 and that previous thereto the territory

embraced within the borough was part of the Township of Exeter. In accordance with other provisions of the stipulation, the petition is found to be in due form and properly filed pursuant to the provisions of The Borough Code. However, the borough challenges the method of procedure and requests that the petition be dismissed because it is claimed that the code provisions under which the petition was filed on June 27, 1972, are no longer in effect but that said provisions have been repealed and superseded by changes to the Pennsylvania Constitution approved by the electorate on April 23, 1968, particularly section 8, Article IX of the Constitution pertaining to consolidation, merger and change of boundaries of municipalities.

On April 23, 1968, the electorate of Pennsylvania approved a new local government article for the Pennsylvania Constitution. Section 8 of the New Article IX reads as follows:

"Section 8. Consolidation, merger or boundary change

"Uniform Legislation. The General Assembly shall, within two years following the adoption of this article, enact uniform legislation establishing the procedure for consolidation, merger or change of the boundaries of municipalities.

"Initiative. The electors of any municipality shall have the right, by initiative and referendum, to consolidate, merge and change boundaries by a majority vote of those voting thereon in each municipality, without the approval of any governing body.

"Study. The General Assembly shall designate an agency of the Commonwealth to study consolidation, merger and boundary changes, advise municipalities on all problems which might be connected therewith, and initiate local referendum.

"Legislative Power. Nothing herein shall prohibit or prevent the General Assembly from providing additional methods for consolidation, merger or change of boundaries."

Section 14 of new Article IX reads as follows:

"Section 14. Definitions.

"As used in this article, the following words shall have the following meanings:

" 'Municipality' means a county, city, borough, incorporated town, township or any similar general purpose unit of government which shall hereafter be created by the General Assembly.

" 'Initiative' means the filing with the applicable election officials at least ninety days prior to the next primary or general election of a petition containing a proposal for referendum signed by electors comprising five percent of the number of electors voting for the office of Governor in the last gubernatorial general election in each municipality or area affected. The applicable election official shall place the proposal on the ballot in a manner fairly representing the content of the petition for decision by referendum at said election. Initiative on a similar question shall not be submitted more often than once in five years. No enabling law shall be required for initiative.

" 'Referendum' means approval of a question placed on the ballot, by initiative or otherwise, by a majority vote of the electors voting thereon."

The schedule at the end of said section 14, art. IX, provides in part as follows:

"This new article and the repeal of existing sections shall take effect on the date of approval by the electorate, except that the following sections shall take effect on the effective date of legislation adopted pursuant to the sections or the date indicated below, whichever shall first occur.

"The first, third and fourth paragraphs of section eight shall take effect two years after the effective date."

The borough argues that the proposed charter annulment and reversion of the borough territory to the township is in fact a merger of the borough and the township, and that the new constitutional provisions are applicable thereto and supersede the code provisions under which the petition was filed, that since the General Assembly has failed to enact legislation establishing the procedure for consolidation, merger or change of boundaries of municipalities as mandated by the first paragraph of section 8 of Article IX, the second paragraph of section 8 providing for initiative and referendum, which is self-executing, is applicable and is the only procedure now available for merger of municipalities. We agree with the borough's position.

Webster's Third New International Dictionary, 1968 edition, defines "merger" in part as "the absorption of an estate, a contract, or an interest in another, of a minor offense in a greater, or of an obligation into a judgment . . . absorption by a corporation of one or more others—distinguished from consolidation." Black's Law Dictionary, 4th edition, 1951, defines "merger" in part as "The fusion or absorption of one thing or right into another . . . The union of two or more corporations by the transfer of property of all to one of them, which continues in existence, the others being swallowed up or merged therein."

The effect of annulment of a borough charter under the provisions of The Borough Code is spelled out in In re Landisburg Borough Charter, 44 D. & C. 611 (Perry) (1942), at page 615:

"If a decree of annulment is entered, to paraphrase the language of the Superior Court in Ortlip v. Shiv-

ery, 66 Pa. Superior Ct. 334, 337, the borough charter will be declared to have no legal existence, the borough as a corporate entity will cease to exist, the whole fabric of the municipality will fall, and the decree will be notice to the world that there is no Landisburg Borough. And the territory within the borough boundary lines will revert to the Township of Tyrone, which surrounds it on all sides, and become subject to the laws regulating second-class townships. All the officers of the borough, such as burgess, councilmen, high constable, assessor, tax collector, and auditors, and all the officers who are not borough officers but are elected for the territory embraced within the borough limits, such as constable and justice of the peace, will cease, from the date of the decree of annulment, to be public officers and to have any authority as such: Commonwealth ex rel. v. Hudson, 253 Pa. 1; Ortlip v. Shivery, supra. Also, one of the effects of a decree of annulment will be the abolition of the election district of the borough, since the electors of the borough election district would automatically become residents of the township election district."

Petitioners argue that the code provisions in question pertain to annulment of a borough charter as distinguished from a merger. However, there are no other code provisions applicable to the absorption of a borough by a township, and we conclude that a merger by any other name is still a merger. Further, the proceeding obviously involves a change in municipal boundaries which also brings it under section 8, Article IX of the Constitution.

Petitioners also argue that even though the court concludes that section 8, Article IX of the Constitution is applicable and that initiative and referendum is recognized as a method for merger, the code provi-

sions are not thereby rendered null and void but simply furnish an additional method, particularly in view of the above-quoted fourth paragraph of section 8 which recognizes the power of the General Assembly to provide "additional methods for consolidation, merger or change of boundaries." To so conclude would be to ignore the constitutional mandate that the General Assembly "shall" enact uniform legislation establishing the procedure for consolidation, merger or change of boundaries of municipalities, as well as the provision of the schedule under section 14 that the first and fourth paragraphs of section 8 take effect on the effective date of legislation "adopted pursuant to" said section or two years "after the effective date," whichever occurs first. Uniform legislation might well provide for a method different from and in addition to initiative and referendum, and other legislation might provide for additional methods and even similar to those previously in effect for change of boundaries, but we view the provisions of section 8 as having prospective application, i.e., that legislation is mandated and authorized to be enacted pursuant thereto and until this is done the Constitution has pre-empted the field by providing initiative and referendum as the method, and not as allowing prior inconsistent statutory provisions to remain in effect because of the failure of the General Assembly to act. Baldwin Borough Appeal, 217 Pa. Superior Ct. 346 (1970), at pp. 350-351, held that the statute governing annexation proceedings (which statute predated the adoption of Article IX of the Constitution by the electorate on April 23, 1968), "continued in effect *at least* [1] until the expiration of two years from the adoption of the Article since the General Assembly did not act within that period," and in the footnote the court discusses the possibility

that, reading section 8 in conjunction with the schedule of effective dates applicable thereto, the effective date of paragraph one of section 8 is four years rather than two years. But even so, the petition in the within case was filed more than four years after the adoption of new Article IX.

We conclude that as of the present time the proper method for merging the Borough of St. Lawrence with the Township of Exeter is by initiative and referendum as provided in section 8 of Article IX of the Pennsylvania Constitution.

Petition dismissed.